## Davis *v.* State

No. 40364 February 4, 1957 92 So. 2d 359

*William E. Andrews, Jr., Jesse W. Shanks,* Purvis, for appellant.

*John H. Price, Jr., Asst. Atly. Gen.,* Jackson, for appellee.

GILLESPIE, J.

Davis was convicted of larceny. He was not represented by counsel in the trial court.

The general merchandise store owned by H. H. Forbes of Sandy Hook, Mississippi, was entered on April 18, 1955, and there was stolen merchandise of the value of $862.50, an iron safe, and $78.00 in silver dollars. A few days later Davis gave to his mother-in-law certain merchandise identified as having been stolen from the Forbes Store, and about the same time Davis gave his wife about $40.00 in silver dollars. Also, within a few days after the goods were stolen, Davis took some of the bolt goods to a seamstress in Forrest County to have made up into clothing. This material was also identified as a part of the goods taken from the Forbes Store. About a month after the goods were stolen from the Forbes Store, Davis left Mississippi, and was arrested in Oregon about a year later where he was using a fictitious name. On the return from Oregon in the custody of officers, and after being questioned about the theft, and especially the iron safe, Davis stated to the officer that he had been dodging around the country and he was glad it had come to a head and he wanted to go back home and straighten things up and get it off his shoulders; and

Davis also asked the officer, "Suppose that safe has been destroyed?"

While in jail in Marion County and before the trial below, Davis made the remark to the sheriff that he fell heir to the Forbes "loot", that he did not actually go in the store; that he knew it was going to happen.

There was no direct evidence that Davis committed the crime of larceny. No witness testified that he was ever seen in the county where the crime was committed. The testimony of the State rested on the fact that he disposed of some of the stolen goods within a few days of the theft, and the presumption or inference that arises therefrom, together with the fact that some time later he left the State and assumed a fictitious name, and made the statements attributed to him by the officers. It appears that only a small portion of the stolen goods was traced to Davis' possession.

Davis took the stand in his own behalf. He testified that he was a rodeo boy and worked with livestock all his life and know other rodeo boys; that some of the other rodeo boys owed him some money and they paid him off with a quantity of silver dollars and the merchandise; that silver dollars are common in the west where rodeo boys travel; that he got about $100 worth of goods and $27 in silver dollars for a debt due him by the boys amounting to about $40 or $45; that some of the goods given his mother-in-law was bought at a rummage sale at Petal, Mississippi; and he said the reason he left the State of Mississippi was that he had a whiskey charge against him. He testified that the reason he mentioned the safe in the statement to the officer when returning to Mississippi was because the officer had repeatedly questioned him about Mr. Forbes' safe and had assured him that it would go light with him if he would get the safe back. This was not denied by the officer.

When the sheriff of Marion County was testifying, he stated that Davis had told him that he (Davis) had fallen

heir to the loot and at some time Davis said he knew the crime was going to happen. These statements were attributed to Davis by the sheriff without giving the context with which the statements were associated. On cross-examination by Davis as his own counsel, the sheriff was asked numerous questions designed to show the fact that Davis did not state that he came by the goods illegally and to show the entire conversation had between the sheriff and Davis. The court refused to admit any of this tesimony on the ground that any denial or explanation made by Davis to the sheriff would be self-serving. The effect of the refusal to admit the testimony was that the State was permitted to introduce only that part of certain conversations had between Davis and the sheriff that would be against the interest of Davis, without allowing Davis either to show by the sheriff that he denied the crime or to show the entire statement.

 The statements attributed to Davis by the sheriff did not amount to a confession in the proper sense of that term. They were admissions of facts pertinent to the issue which, in connection with other facts, tended to prove the guilt of the accused. The rule as to confessions and admissions is that the entire statement must be admitted.

 "It is an elementary rule of law that when admissions of one on trial for the commission of a criminal offense are allowed in evidence against him, all that he said in that connection must also be permitted to go to the jury, either through the cross-examination of the witness who testified to the admissions or through witnesses produced by the accused. Moreover, the fact the declarations made by the accused were self serving does not preclude their introduction in evidence as a part of his whole statement, if they are relevant to statements introduced by the state and were made on the same occasion as the statements introduced by the state." 20 Am. Jur., Evidence, Sec. 551. The rule in

this respect is the same if the statement amounts to a confession. Ibid., Sec. 488; Coon v. State, 13 S. & M. 246; McCann v. State, 13 S. & M. 471; Lewis v. State, 173 Miss. 721, 163 So. 387 (the rule recognized but not applied).

Davis testified in his own behalf but did not testify concerning the conversation had with the sheriff while in jail at Columbia, probably because the court had already ruled that any exculpatory statement made at that time would be self serving. Moreover, on cross examination, the district attorney ordered Davis to answer the question and not explain what he (Davis) said to the officer on the return form Oregon, so that Davis was not allowed to give the entire statement made to the officer on that occasion.

▮▮ The question arises whether the error in refusing to allow the entire statements to be admitted was harmful error. We think it was. The case against Davis was circumstantial.

We have duly considered the several assignments of error not herein discussed and do not find any other reversible error. From the record as a whole it is clear that the trial judge made an effort to see to it that Davis obtained a fair trial in view of the fact that he had no lawyer representing him. Only in the respect mentioned did the lower court err.

Reversed and remanded.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.