ORDER

JAMES E. GRAVES, JR., Presiding Justice.
This matter is before the Court on the Court’s own Motion. The court granted *970 the Petition for Writ of Certiorari filed by Krystal Marie Teston on April 8, 2010. After due consideration, the Court finds that the petition was improvidently granted and should be dismissed.
IT IS THEREFORE ORDERED that the Petition for Writ of Certiorari filed by Krystal Marie Teston is dismissed as improvidently granted.
SO ORDERED, this the 30th day of September, 2010.
TO DISMISS: GRAVES, P.J., RANDOLPH, LAMAR AND PIERCE, JJ.
DICKINSON, J., OBJECTS TO THE ORDER WITH SEPARATE WRITTEN STATEMENT JOINED BY WALLER, C.J, AND CARLSON, P.J.
NOT PARTICIPATING: KITCHENS AND CHANDLER, JJ.
DICKINSON, Justice,
Objecting to the Order with Separate Written Statement:

It is an elementary rule of law that when admissions of one on trial for the commission of a criminal offense are allowed in evidence against him, all that he said in that connection must be permitted to go to the jury either through the cross-examination of the witness who testified to the admission or through witnesses produced by the accused.

[1]

¶ 1. Krystal Marie Teston very well may have committed the crimes alleged by the State. If so, her conviction should be rendered by a jury at the conclusion of a fair trial — not this trial in which key, admissible evidence in her defense was withheld from the jury. Respectfully, I cannot join this order.
FACTUAL BACKGROUND AND PROCEEDINGS
¶ 2. Teston was driving in the left lane of Interstate 10 in Biloxi, Mississippi. Lindsay Miller, accompanied by four friends, was driving in the middle lane, slightly behind Teston’s vehicle. Teston decided to pass the vehicle in front of her.
¶ 3. When she pulled into the middle lane, the back of her car was so close to the front of Miller’s vehicle that Miller quickly merged into the right lane, but had to swerve back into the middle lane to avoid hitting the cars in the right lane. This maneuver caused Miller to lose control. Her vehicle struck a concrete barrier, flipped, rolled sideways, and ejected three of the passengers. Miller and two passengers were killed. Two remaining passengers were injured, one severely.
¶ 4. Teston was indicted and prosecuted for driving under the influence of hydroco-done,[2] a pain medication for which she had a prescription. Teston admitted taking two Loreet tablets following the accident to calm herself. But the State’s theory was that she took the Loreet before the accident, causing her to be impaired at the time of the accident.
Teston’s Statements Following the Accident
¶ 5. The State’s case rested on whether it could prove beyond a reasonable doubt that Teston was under the influence of Loreet at the time of the accident. Its primary evidence in that regard was the testimony of the investigating officer, Wesley Brantley.
¶ 6. Approximately thirty to fifty minutes after his initial conversation with Te-ston, at the accident scene, Officer Brant- *971 ley discovered a prescription bottle of Lorcet in her car. When he asked her if she had taken any Lorcet, she replied, “two.” At that time, nothing was asked or said about when Teston had taken the Lorcet.
¶ 7. During the two-hour period between 7:32 p.m. and approximately 9:30 p.m., Officer Brantley questioned Teston several times. During one conversation which took place while they were riding to the police station, Teston said she had taken half a Z-bar (Xanax, or alprazolam) and a Goody’s PM (headache powder) after the accident to help her calm down.
¶ 8. When they got to the police station, Officer Brantley continued to question Te-ston by way of a recorded statement and, for the first time, asked her when she had taken her prescription medication. She replied that she had taken one Lorcet that morning, and that after the accident she had taken one-and-a-half Lorcets, and then another one-half Lorcet, then a Xanax and a Goody’s PM.
¶ 9. At trial, Officer Brantley testified on direct examination that Teston had told him she had taken two Lorcets. Teston’s counsel attempted to cross-examine Officer Brantley, using Teston’s recorded statement about when she had taken the Lor-cet. The trial court ruled not only that the recorded statement was inadmissible, but also that its existence could not be mentioned.
¶ 10. The State also called Dr. Edward Barbieri, a toxicologist, to offer an opinion as to whether, at the time of the accident, Teston had been impaired. The State posed a hypothetical to Dr. Barbieri that included Teston’s statement that she had taken two Lorcet tablets, but did not mention that Teston had stated that she had taken them after the accident. Teston’s counsel — under the trial judge’s instructions not to make any mention of Teston’s recorded statement — was unable to cross-examine Dr. Barbieri using the statement.
Facts Supporting Teston’s Statement
¶ 11. The trial court’s exclusion of Te-ston’s third statement is particularly troubling in view of the following evidence that tends to support Teston’s statement that she had taken the Lorcets after the accident:

1. Officer Brantley’s Observation of Teston

1112. Officer Brantley testified that, as an experienced DUI enforcement officer, he was trained to recognize signs of intoxication and drug use. He stated that he had arrived on the scene at approximately 7:32 p.m. and immediately had approached Teston, who had been sitting on the hood of her car. He had questioned her and then had asked her for her driver’s license. He had observed her as she had stood up, had walked to her car door, had reached inside, had retrieved her purse, had removed her license, and had handed it to him. He also had given Teston a witness-statement form to fill out, which she did.
¶ 13. Officer Brantley was asked about his observations of Teston during this initial encounter. He testified that he did not notice anything out of the ordinary with regard to Teston’s speech or demean- or.
¶ 14. Following his initial conversation with Teston, Officer Brantley left her alone for thirty to fifty minutes to interview other witnesses and attend to other matters. It was during this period that Teston claims she took the two Lorcet tablets. When Officer Brantley returned to have further discussion with Teston, he noticed — for the first time — signs of impairment.
¶ 15. Although the trial judge would not allow Teston’s counsel to cross-examine *972 Officer Brantley concerning her statement that she took the two Lorcet tablets after the accident, Teston’s counsel asked Dr. Barbieri to consider and comment on Officer Brantley’s testimony that he had observed no signs of impairment during his first conversation with Teston following the accident, but some fifty minutes later, he did observe signs of impairment. Dr. Barbieri responded: “I think it’s obvious that something has changed.”

2. Teston’s Actions and Physical Appearance Following the Accident

¶ 16. After the accident, Teston made a U-turn and went back to the accident scene. She parallel-parked her vehicle alongside the road, exited her vehicle, and ran to the overturned SUV, apparently to render aid. Some witnesses said she acted hysterically, screaming and crying. Officer Brantley testified the pupils of her eyes were dilated.
¶ 17. When questioned about Teston’s post-accident behavior and her dilated pupils, Dr. Barbieri testified they were inconsistent with hydrocodone use.

3. The Blood Test

¶ 18. At the police station, Teston consented to a blood test. Officer Brantley then transported Teston to the hospital, where her blood was drawn. The results of the blood test showed that, approximately three hours after the accident, Te-ston had 110 nanograms per milliliter (ng/ml) of hydrocodone in her system.
¶ 19. In discussing the results of the blood test, Dr. Barbieri (again, the State’s own witness) testified that Teston had to have taken some of the Lorcet after the accident. Otherwise, the hydrocodone in her blood prior to the accident would have been at “lethal” levels.
¶ 20. The jury found Teston guilty on three counts of DUI-manslaughter and one count of DUI-causing-serious-injury. The trial court sentenced her to sixty years, with thirty years suspended, and thirty years to serve.
¶21. After the Court of Appeals affirmed the conviction,[3] this Court granted Teston’s petition for writ of certiorari. But now, four of my fellow justices have voted to “un-grant” the petition for writ of certiorari by entering this order. For reasons stated below, I cannot join.
LEGAL ANALYSIS
¶ 22. We do not reverse a trial judge’s decision to allow, or disallow, evidence unless the judge’s decision was wrong, and it affected a substantial right of the party.[4]
Teston’s Third Statement Was Admissible Evidence.
¶ 23. Under our rules of evidence, relevant evidence is admissible unless it is excluded by the Mississippi Rules of Evidence or the state or federal constitution. Our rules of evidence specifically provide:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules.[5]
¶ 24. In other words, the proponent of evidence is not required to rummage through the rules to find one that says the evidence is admissible. Instead, one who objects to the admission of the evidence must identify a rule that excludes it.
*973 ¶ 25. The State advanced two arguments against allowing Teston’s counsel to use the recorded statement to cross-examine Officer Brantley: first, that it was hearsay, and second, that it was “self-serving.” The trial judge’s ruling was not based on either of these arguments, but rather on the erroneous concept that Te-ston was required to articulate a “constitutional or statutory right to introduce [the] statements” that police took from her. Specifically, the trial judge stated:
[Teston] has no right to introduce the statements that the police took of her. She has no constitutional or statutory right to introduce those statements in lieu of taking the stand where she can be cross-examined.... [T]he defense is instructed not to ask the State’s witnesses of the substance or even the existence of a tape-recorded statement unless Ms. Teston first testifies to that fact.
¶26. In his ruling, the trial judge placed on Teston a burden unknown to Mississippi’s rules of evidence or caselaw. Although the trial judge’s decision did not rest on the State’s arguments, I will address them.

Hearsay

¶27. It is not uncommon to find a practicing lawyer, or even a judge, who erroneously believes that any statement made outside the courtroom is hearsay. According to our rules of evidence, however, a statement is not hearsay unless it satisfies two requirements. First, it must have been “a statement, other than one made by the declarant while testifying at the trial or hearing....”[6] Such statements are commonly called out-of-court statements.
¶ 28. Second, the out-of-court statement must have been “offered in evidence to prove the truth of the matter asserted.”[7] If the out-of-court statement is offered for any other purpose, it is not excluded from evidence by the rule against hearsay.[8] And on this point, the rules of evidence include no exception for out-of-court statements made by a defendant. To be clear, a defendant’s out-of-court statement is not hearsay if it is not offered to prove the truth of the matter asserted.
¶29. Teston’s counsel argued to the trial judge, the Court of Appeals, and this Court that he should have been allowed to use Teston’s third statement. His purpose was not to prove when Teston took the Lorcet, but rather to cross-examine Officer Brantley and rebut the incorrect implication — created by the State’s introduction (through Officer Brantley) of only the first two statements — that Teston had admitted taking all the Lorcet prior to the accident.
¶ 30. Specifically, Teston wanted to use the third statement to cross-examine Officer Brantley and impeach the following testimony elicited from him by the prosecutor:
A. ... And I asked her, I said, have you taken — how many of these [Lorcet] have you taken today? Have you taken any of these today? And she stated that she had taken two.
Q. Two today?
*974 A. And I said, have you taken anything else? And then that’s when she advised me that she’d had a Xanax and a Goody’s right after the crash to calm her down, she said.[9]
Q. So her exact comment to you was that she had two Lorcet that day?
A. Yeah.
Q. And what time of night was this that you were interviewing her?
A. This was approximately nine o’clock at this time.
Q. And that after the accident to calm her down she had what?
A. She said immediately after the acci- . dent she’d taken half a Z-Bar, or a Xanax, and a Goody’s PM to calm her down.
¶ 31. The picture presented by the prosecutor’s carefully worded questions about selected portions of Teston’s statements was that — during the same conversation: (1) Teston told the officer she had taken two Lorcet tablets “that day” while the accident and interview had taken place at “night,” and (2) after the accident, all Teston had said she took to calm herself was “half a Z-Bar, or a Xanax, and a Goody’s PM.”
¶ 32. In truth, Officer Brantley later admitted that, during this conversation, he did not ask her, “have you taken anything else?” He asked her only if she had taken any Lorcet, and her only response was “two.” Later, on the way to the hospital, she told him she had taken half a Zanax and a Goody’s. In her recorded statement (which was not allowed in evidence), Te-ston told Officer Brantley she had taken one Lorcet during the day, and two Lor-cets after the accident to calm herself.
¶ 33. Teston’s counsel wanted to cross-examine Officer Brantley to establish that Teston did not admit taking the two Lor-cets before the accident, and that Teston had told Officer Brantley she had taken Lorcet after the accident to help her calm down. So her counsel had perfectly legitimate, nonhearsay purposes for using the third statement.
¶ 34. And even though evidence — if used for one purpose — would be excluded, it may nevertheless be admitted for a different purpose.[10] Because Teston had a purpose for the statement other than to prove the truth of the matters asserted in the statement, it was not hearsay.

Self-Serving Statement

¶ 35. In addition to its unfounded concern that the third statement was hearsay, the State asserts that it was inadmissible because it amounted to a self-serving statement. But our rules of evidence have no such rule of exclusion.
¶ 36. To be sure, there is authority that certain self-serving statements are inadmissible. For instance, American Jurisprudence (Second) provides: “Self-serving declarations — that is, statements made by a defendant in his or her own favor — are not admissible in evidence as proof of the facts asserted.”[11] Of course, a so-called “self-serving statement” offered in evidence as proof of the facts asserted already is inadmissible hearsay under Rule *975 802.[12] So the “self-serving statement” rule adds nothing to the law. And because Teston’s third statement was not offered “as proof of the facts asserted,” not even American Jurisprudence supports its exclusion as a “self-serving statement.”

Caselatv

¶ 37. I began my objection to this order with a portion of a quote from Davis v. State, a case the State argues is inapplicable because it is a “pre-rules” case. However, the State does not explain why, if Davis is inapplicable, this Court quoted it in 1994, with approval, as authority for the same issue before us today. In Banks v. State [13] — decided long after adoption of the Mississippi Rules of Evidence — this Court held:
“It is an elementary rule of law that when admissions of one on trial for the commission of a criminal offense are allowed in evidence against him, all that he said in that connection must be permitted to go to the jury either through the cross-examination of the witness who testified to the admission or through witnesses produced by the accused. Moreover, the fact the declarations made by the accused were self serving does not preclude their introduction in evidence as part of his whole statement, if they are relevant to statements introduced by the state and were made on the same occasion as the statements introduced by the state.... ”
[[Image here]]
The judge’s action in limiting the use of the transcript of Bank[s]’s statement during the testimony of Officer Hill was an infringement of the right of cross-examination. The statement was relevant to show the full story of what happened .... The court was wrong to limit Banks in the extent of his use of the transcription of his statement to the police and in the specific cross-examination of [Officer] Hill. This assignment by Banks is meritorious and we hold it to be reversible error.[14]
¶ 38. In reviewing the Banks Court’s discussion of Davis, it is clear to me that the rule of completeness rests not only on basic fairness, but also on the fact that such statements are admissible because theirs is a nonhearsay purpose, and there is no evidentiary basis to exclude them.
¶ 39. Mississippi permits “wide-open cross-examination,” meaning that any relevant matter may be probed.[15] The confrontation clauses of the U.S. and Mississippi Constitutions secure a defendant’s right to examine witnesses against them.[16] This Court has held that
the right of cross-examination ... includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.[17]
¶ 40. In Swinney v. State,[18] the defendant gave a series of statements while in *976 police custody.[19] In her first three statements, the defendant denied shooting the victim.[20] But two days later, the defendant admitted that she accidentally had shot the victim in the back.[21] The trial judge admitted the defendant’s inculpatory statement into evidence, but excluded her three previous statements and prevented the defense from asking the State’s witnesses about her exculpatory statements on cross-examination.[22] We held that the trial court had erred in admitting portions of the defendant’s statements that favored the State, but not allowing the defendant to draw out on cross-examination those portions that favored her position.[23]
¶41. Our rules and precedent clearly establish that Teston should have been allowed to use her recorded statement to cross-examine Officer Brantley. And as this Court held in Davis v. State, the denial of a defendant’s right to cross-examine a witness under such circumstances affects a substantial right, and is reversible error.

Arrest for Suspended, Driver’s License

¶ 42. One more point needs to be made. Our rules of evidence provide that “[e]vi-dence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.”[24] Accordingly, Te-ston’s counsel moved in limine for an order prohibiting the State from introducing evidence that Teston had been arrested for driving with a suspended driver’s license. The State confessed the motion, and the trial court entered an order accordingly.
¶ 43. Later, the State changed its mind and moved the court to reverse its order. The trial court denied the request. Then, following voir dire and jury selection, the State again moved the court to reverse its ruling, arguing that it needed evidence of the arrest to explain why there was no field sobriety test. Based on that representation, the trial court reversed its ruling and allowed the State to introduce evidence of the arrest for that purpose. The State now argues in its brief:
Evidence of the arrest was introduced simply to explain the entire story of these felonies.... It was not introduced to demonstrate that [Teston] was a bad woman, or for any other such forbidden purpose.
One can easily borrow the State’s argument, change only a few words, and apply it to Teston’s argument concerning the recorded statement:
Evidence of Teston’s statement was offered simply to explain the entire story of her admissions.... It was not offered to demonstrate the truth of the matter asserted, or for any other such forbidden purpose.
CONCLUSION
¶ 44. The inherent error and unfairness of allowing the State to introduce through a witness the favorable parts of what the defendant said about a particular matter— while preventing the defendant from using or referring to the parts favorable to the defendant on cross-examination — seems as obvious to me today as it was to this Court more than a half-century ago in Davis v. State.
¶ 45. Under the facts and circumstances of this case, the trial court erred in refusing to allow Teston’s counsel to cross- *977 examine Officer Brantley using Teston’s recorded statement about when she had taken the Lorcet. This Court was correct when it granted Teston’s petition for writ of certiorari, and it is wrong to reverse itself now and dismiss that petition as improvidently granted.
WALLER, C.J., AND CARLSON, P.J., JOIN THIS SEPARATE WRITTEN STATEMENT.

. Davis v. State, 230 Miss. 183, 188, 92 So.2d 359, 361 (1957).

. The brand name of hydrocodone involved in this case is Loreet.

. Teston v. State, 44 So.3d 977 (Miss.Ct.App.2008).

. Miss. R. Evid. 103(a). See also Mingo v. State, 944 So.2d 18, 28 (Miss.2006) (citing Parks v. State, 884 So.2d 738, 742 (Miss.2004)).

. Miss. R. Evid. 402 (emphasis added).

. Miss. R. Evid. 801(c).

. Id.

. Miss. R. Evid. 802. See Hull v. State, 687 So.2d 708 (Miss.1997) (scientists’ out-of-court approvals of laboratory DNA match not hearsay because not offered to prove the truth of the DNA match); Moody v. RPM Pizza, Inc., 659 So.2d 877 (Miss.1995) (out-of-court statement offered to explain notation in medical record not hearsay because not offered to prove truth of matter asserted).

. Officer Brantley later admitted that he was in error in testifying that Teston mentioned the Zanax and Goody’s at that time.

. United States v. Abel, 469 U.S. 45, 56, 105 S.Ct. 465, 471, 83 L.Ed.2d 450 (1984) (“There is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case.”).

.29A Am.Jur.2á Evidence § 809 (2008) (emphasis added).

. Miss. R. Evid. 802.

. Banks v. State, 631 So.2d 748, 750 (Miss.1994).

. Id. (quoting Davis v. State, 230 Miss. 183, 188, 92 So.2d 359, 361 (1957)) (emphasis added). See also Sanders v. State, 237 Miss. 772, 115 So.2d 145 (1959).

. Miss R. Evid. 611 cmt.

. U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

. Myers v. State, 296 So.2d 695, 700 (Miss.1974).

. Swinney v. State, 829 So.2d 1225 (Miss.2002).

. Id. at 1229.

. Id. at 1230.

. Id. at 1230, 1232.

. Id. at 1235.

. Id. at 1236.

. Miss. R. Evid. 404(b).