658 So.2d 852 (1995)
Edward REYNOLDS
v.
STATE of Mississippi.
No. 91-KA-01275-SCT.
Supreme Court of Mississippi.
June 29, 1995.
*853 Rabun Jones, Dyer Dyer Jones & Daniels, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Jackson; Wayne Snuggs, Asst. Atty. Gen., Jackson; Ellen Y. Dale, Ridgeland, for appellee.
En Banc.
HAWKINS, Chief Justice, for the Court:
Edward Reynolds was indicted for the crime of sale of a controlled substance on October 2, 1991. After he pled not guilty at his November 4 arraignment, Reynolds was tried by a jury and found guilty on November 21. He was then sentenced to 20 years after a November 27, 1991, sentencing hearing. We affirm his conviction, but remand for a new sentencing hearing.

FACTS
On April 9, 1991, four law enforcement officers, Robert Jennings, Murry Roark, Chuck Foster and Milton Gaston, and one confidential informant, Michael Diggs, conducted a drug sting operation at cafe called Rebecca's in Pace, Mississippi. Two versions of what happened at Rebecca's were presented at the trial, that of the drug-bust team and that of Reynolds. The story told at the trial by Milton Gaston was typical of that given by the law enforcement officers. Gaston testified that he and informant Michael Diggs saw Reynolds standing outside Rebecca's, approached him, and asked if he knew where they could buy some cocaine. According to Gaston, Chuck Foster and Murry Roark were positioned in a truck to the west of Rebecca's at this time, while Robert Jennings was positioned to the northwest. After being so approached, Reynolds invited them inside the cafe, and sold them two rocks of crack cocaine for $40. Gaston paid for the cocaine with a hundred dollar bill, the serial number of which had previously been recorded by Officer Murry Roark. Reynolds gave Gaston the two rocks and three twenty-dollar bills in change. Gaston and Diggs then left Rebecca's, contacted the other officers by radio, and were advised to go back to the cafe to try to make another buy.
Gaston and Diggs returned to Rebecca's and asked Reynolds for more cocaine. Reynolds said that he did not have anymore, and asked a black female, who was the only other occupant of the cafe, if he could borrow her car to go get some more. Gaston testified on direct examination by assistant district attorney Patricia Beckett as to what followed:
Q. What happened then?
A. At that time he advised me that he didn't have any more and he asked to borrow the car, I identified myself as a member of the Central Delta Drug Task Force and advised the black male that he was under arrest.
Q. What happened when you advised him that he was under arrest?
A. I didn't have no badge to identify myself  I'm going undercover and you don't usually carry a badge. So I had my service revolver and pulled it and identified myself and went to grab him and he snatched away and myself, him and Michael Diggs came out of the cafe together tussling.
Reynolds' jacket came off as he fled the cafe and struggled with Gaston and Diggs. After running a short distance, he was caught and subdued by Gaston, Diggs, Roark and Foster. Diggs testified that he then retrieved the jacket and gave it to Roark, who searched it and found the hundred dollar bill which was used to buy the cocaine. Reynolds was subsequently taken by the officers to the Bolivar County Sheriff's Department where, according to Jennings, he was booked at 6:30.
*854 Although it is largely identical to the testimony given by the law enforcement officers, Diggs' version of the events differs in one potentially significant way. On cross-examination Diggs stated that at the time of the sale Reynolds had in his possession several rocks of crack cocaine in addition to the two he gave Gaston. Gaston, on cross-examination, testified that the only rocks he saw were the two that he purchased.
Reynolds' story contradicts that of Diggs and the law enforcement officers. According to him, he was standing outside of Rebecca's when Diggs and Gaston drove up and asked him if he knew where they could find some hashish. After he said he did not, they asked him if he knew where they could find some cocaine. He again said no and went inside the club. Diggs and Gaston then followed him into the club and continued to ask him about cocaine. After Reynolds repeatedly told them that he did not know where to find any, Diggs and Gaston left and returned about thirty minutes later. Reynolds testified that after Gaston and Diggs returned:
Gaston pulled his gun and he told me to get down  "Get down. Get down." And I said, "What you want. What you want," just like that. I'm thinking they trying to rob me. And so he never said who he is and so gradually I am moving to the door at the same time, while asking him what he wants. And as soon as I get close to the door, I run out the door.
He further testified that:
Well, uh, as far as my jacket and all that, they searched my jacket and they found nothing. They was all in my sister's purse. They threatened to go in the house and search all in the house for whatever it was they was looking for. So Chuck Foster and Murry Roark they transported me back to the station and give my clothes, uh, to Michael Diggs,  my belongings. So when I get to the sheriff's department, Diggs comes in with my coat and he says, "Oh, look what I got," and then Murry Roark replied "our money," like that.
The two rocks allegedly sold by Reynolds to Gaston were tested by J.C. Smiley of the North Mississippi Crime Laboratory and were identified as cocaine.
After both the prosecution and defense rested, they retired to Judge Hatcher's chambers to discuss jury instructions. One defense instruction concerned the lesser included offense of possession of a controlled substance:
If you find that the state has failed to prove any one of the essential elements of the crime of sale of a controlled substance, you must find the defendant not guilty of sale of a controlled substance and you will proceed with you [sic] deliberation to decide whether the state has proved, beyond a reasonable doubt, all of the elements of the lesser crime of possession of a controlled substance.
The crime of sale of a controlled substance is distinguished from possession of a controlled substance by the absence or failure to prove a sell. If you find from the evidence, beyond a reasonable doubt, that the defendant Edward Reynolds, knowingly possessed a controlled substance, then you shall find the defendant guilty of possession of a controlled substance. If the state has failed to prove any one of th [sic] elements of possession of a controlled substance, then your verdict shall be not guilty.
This was refused.
BY THE COURT:
What evidence do you have which would indicate only possession?
BY (defense counsel) MR. CLIFTON:
Well, the only thing I have on that, Your Honor, is that possession is an inherent element of sale. But there was no direct evidence on possession itself except to the extent that he had these in his pockets. So I submitted a lesser included offense, but 
BY THE COURT:
 What witness testified he possessed it, but didn't sell it?
BY MR. CLIFTON:
I don't think there were any witnesses.
BY THE COURT:

*855 What combination of testimony could any juror ever conclude that he possessed it, but didn't sell it? What testimony would justify that?
BY MR. CLIFTON:
I don't know whether there is any, Your Honor.
The second controversial instruction was proffered by the state and concerned the flight of the defendant:
Flight is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt, that the defendant, EDWARD REYNOLDS, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilty [sic] or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant.
Judge Hatcher decided to give this instruction despite a timely objection by the counsel for the defendant.
The jury found Reynolds guilty. A sentencing hearing was held six days later on November 27. At this hearing the State provided the judge with a great deal of information which had not been presented at trial. This information largely concerned two other criminal matters involving Reynolds. One concerned possession with intent to transfer, deliver or sell cocaine. According to the prosecution, this case, Cause No. 7461, had been delayed because Reynolds had threatened one of the witnesses who then fled to Oregon. The other, Cause No. 7478, was "an aggravated assault charge against Edward Reynolds for absolutely beating the fire out of Michael Diggs... ." According to the prosecution, Diggs had also been further threatened since that attack and Reynolds had been overheard saying that he was going to have Diggs killed. Defense counsel objected to these revelations by the prosecution as they were hearsay and speculation, and because they were not present in the presentence report:
Your Honor, this is my first time hearing this that has been announced to the Court today. I don't know anything about threats or the family's threats or anything of that nature. That has not been communicated to me. Only one time I talked to (Cause No. 7461 witness) Mr. Quinton and Mr. Quinton did say that he had talked to a family member and he didn't say directly that had happened, but he indicated that something had happened to cause him to leave. Other than that, I haven't heard anything. But I don't think those things should be considered, Your Honor, for the simple reason that, even in the sentencing phase, if those things are considered, it amounts to somehow having Mr. Reynolds' sentence enhanced because of speculation on things that he has not been convicted of or even charged with. I can't really respond to those because I have no knowledge of any of that. I am not doubting the assistant district attorney here. It is just that I don't know anything about it. So I don't know how to respond to it.
The circuit judge disregarded these protestations and sentenced Reynolds to 20 years. Reynolds appealed.

LAW

I. LESSER INCLUDED OFFENSE
Reynolds first asks on appeal whether reversible error occurred when the trial court refused his request that the jury be instructed on the lesser included offense of possession of cocaine. Ormond v. State, 599 So.2d 951 (Miss. 1992), provides a useful discussion as to when to give a lesser-included offense instruction, saying it is proper:
[O]nly if the record supports finding an evidentiary basis for the instruction. Such instructions should not be indiscriminately granted, nor should they be based upon pure speculation. Under the appropriate standard:
a lesser included offense instruction should be granted unless the trial judge  and ultimately this (the Supreme) Court  can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the *856 evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Id., at 960-961 (quoting Mease v. State, 539 So.2d 1324, 1330 (Miss. 1989)).
Stephens v. State, 592 So.2d 990 (Miss. 1991), presents an example of the proper use of a lesser-included-offense charge in a case involving the sale of drugs. In Stephens, the only evidence that would have supported the use of such a charge was testimony by a witness which directly contradicted a statement which she had previously made and who admitted on cross-examination to having once been convicted of the crime of false pretense. This Court, in affirming the lower court's refusal to include a lesser-included-offense instruction, stated, "There is no evidence presented that could possibly support Stephens' claim, unless the court stultified itself and took the position that the impeached testimony of (the above-mentioned witness) supported it." Id., at 993.
In the case at bar, Reynolds claims that a lesser-included offense instruction concerning possession of a controlled substance was warranted by the evidence presented at trial. However, an examination of the record reveals that no such evidence exists. Defense counsel admitted as much during the sentencing hearing, stating when asked by Judge Hatcher what combination of testimony could a juror rely upon to justify a finding of possession, "I don't know whether there is any, Your Honor."
On appeal, counsel points to testimony by Michael Diggs which stated that Reynolds possessed several rocks of crack cocaine in addition to the two he sold. However, this testimony is not by itself enough to necessitate the granting of a lesser included offense instruction. Diggs did not testify that Reynolds only possessed the extra rocks, he testified that he possessed more rocks than he sold. No reasonable jury could have found Reynolds guilty of the lesser offense of possession of a controlled substance based on this testimony alone. Furthermore, as Stephens demonstrates, the mere fact that one must possess a controlled substance before they can sell it is not enough to require a lesser included offense instruction. Even though the defendant in Stephens was found guilty of possession with intent to sell, the judge's refusal to grant a lesser included offense instruction was deemed proper.
Given the testimony and evidence presented at trial, Judge Hatcher's failure to give the jury a lesser included offense instruction concerning possession of a controlled substance was justified and is therefore affirmed.

II. EVIDENCE OF FLIGHT
Reynolds next asks whether the judge should have charged the jury that they could consider as evidence his flight from the scene of the alleged crime. Under Fuselier v. State, 468 So.2d 45 (Miss. 1985), "an instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." Id., at 57. Fuselier requires that a two-prong test must be satisfied before a flight instruction may be granted. The flight of the defendant must be both (1) unexplained and (2) probative.
In regard to the first of these prongs, the case at bar is quite similar to another flight instruction case, Brock v. State, 530 So.2d 146 (Miss. 1988). In that case the defendant ran when he was confronted by a woman who claimed he raped and shot her. He attempted to explain his flight at trial, but, as this Court wrote while approving the use of the flight instruction, "his explanation is contradicted and has no support outside his own testimony." Id., at 153. Here, Reynolds attempted to explain his running from Rebecca's by saying that he thought he was being robbed by Gaston and Diggs. Like the defendant in Brock, however, his explanation was contradicted and unsupported by the rest of the evidence. As his flight was therefore left unexplained, the first of the Fuselier prongs is satisfied.
Furthermore, the second flight instruction prong is similarly satisfied. The fact that Reynolds ran out of Rebecca's when *857 law enforcement officers with whom he had just completed a drug sale tried to arrest him is quite probative of his guilt or guilty knowledge. A juror would certainly find this information to be quite useful in making their determination as to the defendant's guilt or innocence.
Given the evidence introduced in the case below, Reynolds' fleeing the crime scene when confronted by Gaston and Diggs was both unexplained and probative. The use of the flight instruction by Judge Hatcher was therefore proper and is affirmed.

III. PRESENTENCE REPORT
Finally, Reynolds asks whether the trial court in passing sentence erroneously relied on information which was not contained in the presentence report. Rule 5.13(2) of the Uniform Criminal Rules of Circuit Court Practice lays the foundation for sentencing hearing procedure. It states in part:
(2) Upon conviction, or after a plea of guilty, there shall be a hearing before the trial judge as follows:
a. A presentence investigation shall be conducted and a report thereof shall be made, consisting of a complete record of the offender's criminal history, educational level, employment history, and when required by the court, his psychological condition, and such other information as the judge shall deem necessary. A copy of said report shall be delivered to the defendant for use by him and his attorney.
b. The state may introduce evidence of aggravation of the offense to which the defendant has been convicted or pleaded guilty.
c. The defendant may introduce in evidence any evidence he deems necessary to contradict or supplement any information contained in the presentence investigation report.
d. The defendant may introduce any evidence of extenuation or mitigation.
e. The state may introduce evidence in rebuttal of evidence of the defendant.
Unif.Crim.R.Cir.Ct.Prac., Rule 5.13(2).
One of the tools used to gather information for sentencing is the presentence report, discussed in Rule 5.13(2)a above and detailed in Rule 6.02:
Upon acceptance of a plea of guilty, or upon a finding of guilt, and where the court has discretion as to the sentence to be imposed, the court may direct the presentence investigator to make a presentence investigation and report.
The report of the presentence investigation may contain, but is not limited to, the following information:
... .
Unif.Crim.R.Cir.Ct.Prac., Rule 6.02.
This Rule goes on to list nine specific types of information which may be included in a presentencing report.
Rule 6.03 details the procedure for the disclosure of the findings of the presentence investigation:
The trial judge may disclose any of the contents of the presentence investigation only to counsel of record prior to sentencing. Any information so disclosed to one party shall be disclosed to the opposing party.

If there be a bifurcated hearing, all factual material shall be disclosed to the state and the defendant a reasonable time prior to sentencing so as to afford a reasonable opportunity for verification of the material. Prior to the sentencing proceeding each party is required to notify the opposing party and the court of any part of the report which he intends to controvert by the production of evidence, and a summary hearing may be had on the matters in issue.
Unif.Crim.R.Cir.Ct.Prac., Rule 6.03 (emphasis added).
While the rule may not explicitly apply to matters presented by the parties, as opposed to factors ordinarily included in a presentence report, as a matter of elementary fairness, we conclude that the same procedure should obtain.
The prosecution introduced damaging evidence at the sentencing hearing which had not been introduced at trial. The defense objected that this had not been disclosed to them before the sentencing hearing and that *858 it was not in the presentence report. Under Rule 6.03, the admission of this evidence was erroneous. This rule is designed to prevent a party from being blindsided by new information which he has not had an opportunity to verify or disprove. The uncontroverted protests of the defense counsel at the sentencing hearing shows the awkward position that the prosecution's unheralded revelations placed him in: "I can't really respond to those [accusations] because I have no knowledge of any of that. I am not doubting the assistant district attorney here. It is just that I don't know anything about it. So I don't know how to respond to it." Had the rule been followed, this situation would have been avoided and defense counsel would have been able to properly defend his client.
Defense counsel was placed in the precise situation Rule 6.03 was designed to prevent.
Reynolds' conviction of sale of a controlled substance is affirmed, but this cause is remanded for a new sentencing hearing in which the State will fully inform the defense in advance of all evidence to be introduced therein.
CONVICTION OF SALE OF CONTROLLED SUBSTANCE AFFIRMED; REVERSED AND REMANDED FOR A NEW SENTENCING HEARING FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS and McRAE, JJ., concur.
SMITH, J., dissents with separate written opinion joined by PITTMAN and JAMES L. ROBERTS, Jr., JJ.
SMITH, Justice, dissenting:
I agree that Reynolds' conviction should be upheld. The majority is also correct in its assertion that Unif.Crim.R.Cir.Ct.Prac., Rule 5.13(2) sets out the procedure to be followed in conducting presentencing hearings. I have no problem with stating that all factors which the State intends to present to the trial judge at sentencing should be revealed in advance to the defense as a matter of "fairness." However, the majority claims Unif.Crim.R.Cir.Ct.Prac., Rule 6.03 as authority to remand Reynolds' case for a new sentencing hearing. The majority maintains that Rule 6.03 was not complied with because the prosecutor failed to disclose to Reynolds, prior to the sentencing hearing, certain hearsay information that was not included in the presentence report. The majority is mistaken in its application of Rule 6.03.
Rule 6.03 only applies to presentence reports. The reports are not prepared much less presented to the trial court by the Office of the District Attorney. Presentence reports are the total responsibility of the Mississippi Department of Corrections, Office of Parole and Probation. Reports are prepared and submitted unto the trial court by a probation officer from that department.
Rule 5.13(2)(b) is the controlling factor regarding this issue, not Rule 6.03. The State is allowed to introduce evidence of aggravation of the offense and such evidence may appropriately be hearsay. See Rule 5.13(2)(b). That is exactly what occurred in this case. The prosecutor advised the trial court of several matters of concern which were totally hearsay. Upon objection by Reynolds' counsel, Judge Hatcher correctly advised counsel that rules of evidence are not followed during sentencing. M.R.E. 1101(b)(3). See also, U.S. v. Paden, 908 F.2d 1229, reh. denied 914 F.2d 251, cert. denied 498 U.S. 1039, 112 L.Ed.2d 699 (5th Cir.1990).
Rule 5.13(2)(c)(d), allows the defendant to introduce any evidence to contradict or supplement information in the presentence report as well as to rebut the State's evidence. Reynolds was afforded that opportunity. Reynolds testified before the trial court to all matters that he so desired to inform the judge of prior to sentencing. The majority protests loudly that Reynolds was "blindsided" by the prosecution's new information which "he has not had an opportunity to verify or disprove." Majority Opinion, at 856. Reynolds' counsel stated: "I can't really respond to those [accusations] because I have no knowledge of any of that." However, that is not totally the case at all. Reynold's counsel did indicate that he had talked to Officer Quinton in advance of the sentencing *859 hearing and that Quinton had advised him that a problem had ensued which had caused a witness to leave the state. Obviously, defense counsel had some prior warning that something was amiss. Reynold's counsel failed to follow-up on the information he received from Officer Quinton.
The bottom line to all of this is there simply is no violation of Rule 6.03 by the State. The State was not required to reveal anything in advance of the sentencing hearing under Rule 5.13(2). Excepting Reynold's testimony, all information submitted to the trial judge, including the presentence report was hearsay evidence, and "hearsay" is permissible at sentencing.
There remains yet another aspect of the majority opinion that needs addressing. Reynolds could have been sentenced to a maximum thirty (30) years and a fine of one million dollars. § 4-29-139(b)(1) Miss. Code Ann. (1972), as amended. The trial court only sentenced Reynolds to a term of twenty (20) years, much less than the maximum allowed by the statute.
This Court, in Evans v. State, 547 So.2d 38 (Miss. 1989), has held:
The trial judge ... sitting without a jury, [has] broad discretion in the things he [is] able to consider. He may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come.
Id., at 41.
In Jackson v. State, 551 So.2d 132 (Miss. 1989), this Court stated:
Our law has long provided that the imposition of sentence following a criminal conviction is a matter within the discretion of the Circuit Court, subject only to statutory and constitutional limitations. So long as these are not offended, we rarely interfere. Moreover, the Court is not limited to the consideration of evidence presented of record at trial when imposing sentence.
Id., at 149.
This Court recently reaffirmed its precedent position in Stromas v. State, 618 So.2d 116, 122 (Miss. 1993), Prather, P.J., wherein the Court stated:
As a general rule, a sentence will not be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.
The trial court was well within its discretion allowing all matters submitted at the sentencing hearing. It is noteworthy that the trial judge did not state that he even considered any of the hearsay statements of the prosecutor. Indeed, the fact that Reynolds did not receive the maximum sentence for sale of cocaine significantly indicates Judge Hatcher placed little, if any, reliance on the prosecutor's statements. In fact, Judge Hatcher stated on the record that he would weigh their remarks as he saw fit. The sentence was well within the statutory limit, the trial court has broad discretion in sentencing, and "hearsay" is admissible in sentencing hearings. There was no error under Rule 6.03.
I respectfully dissent.
PITTMAN and JAMES L. ROBERTS, Jr., JJ., JOIN THIS OPINION.