*652 WILSON, J.,
concurring in part and dissenting in part:
¶ 100. I concur in the majority’s discussion and resolution of most of the claims that Kuebler raises on appeal. However, rather than affirming Kuebler’s conviction and sentence at this stage, I conclude that it is necessary to remand the case to the trial court for the limited purpose of making findings of fact as to whether a discovery violation occurred. If such a violation occurred, I believe that a continuance or mistrial would have been required. The trial judge appears to have resolved the issue on other grounds, but I submit that the issue cannot be decided without determining whether there was a discovery violation. I also differ with the majority’s analysis of three other issues — the flight instruction and evidence, evidence of Tamra’s drug use on the day she died, and evidence that Kuebler made racial slurs while he was being arrested — but agree that none of these issues require reversal.
Gunshot Residue Evidence
¶ 101. Uniform Rule of Circuit and County Court Practice 9.04(A)(5) requires the prosecution to disclose to the defendant “[a]ny physical evidence ... relevant to the case.” This provision clearly required disclosure of the gunpowder residue kit collected from Tamra. My concern is only with the kit itself, not the test results. This is because the State is not required “to test every item of evidence collected” but only to disclose the physical evidence to the defendant (who may then seek to have it tested). Flaggs v. State, 999 So.2d 393, 399 (¶ 18) (Miss.Ct.App. 2008). Thus, Rule 9.04 did not require the State to test the kit. The State did submit the kit for testing but, for reasons that remain unclear, not until the first day of trial. The State concedes that results of the test were exculpatory, triggering a production obligation under Brady,[17] which the State fulfilled with respect to the test results. Accordingly, I submit that the remaining issue at this point is whether the State complied with Rule 9.04 with respect to the actual physical evidence— the kit.
¶ 102. The State denies that a discovery violation occurred (an issue I address below) but alternatively argues that there was no Rule 9.04 violation because that Rule only “contemplates a situation in which the State belatedly attempts to introduce evidence beneficial to its own case; it is out of concern for that situation that the Rule permits a continuance or mistrial unless the State withdraws its attempt to introduce that evidence.” See URCCC 9.04(1). The State reasons that the Rule has no application here because the test results were exculpatory, and so Kuebler did not object to the admission of the evidence. This argument is a fair reading of paragraph (I) in isolation, but I am reluctant to interpret one part of the Rule to preclude a remedy for a clear violation of another part, i.e., Rule 9.04(A)(5). The recognized purpose of Rule 9.04 “is to avoid ambush or unfair surprise to either party at trial.” Densmore v. State, 27 So.3d 379, 382 (¶ 11) (Miss.2009). If the State violates Rule 9.04(A) in a way that actually ambushes or unfairly surprises the defendant at trial, a continuance or mistrial should be granted.
¶ 103. My review of the record in this ease leads me to conclude that the defense was surprised at trial by the existence of the kit, as well as the results of the test. By the time this evidence came to defense counsel’s attention, they had already cross-examined multiple police officers about their failure (or so the defense thought) to collect a gunpowder residue kit from Tam *653 ra’s hands, which the defense portrayed as evidence of shoddy police work. None of these witnesses testified that a kit had, in fact, been collected. On appeal, the State argues that the defense was informed on the first day of trial that a test was being conducted. However, defense counsel’s questioning of these witnesses belies the State’s argument, and I read the district attorney’s answers to the trial judge’s questions as acknowledging that the test was not mentioned to the defense until the results were obtained on the third day of trial. Finally, while the test results themselves were consistent with Keubler’s theory of the case, he was deprived of a meaningful opportunity to pursue further expert analysis that might (or might not) have assisted his defense.
¶ 104. While I am thus persuaded that Kuebler was surprised at trial, the question remains whether he was “ambush[ed]” by “unfair surprise” — i.e., whether there was any discovery violation. Densmore, 27 So.3d at 382 (¶ 11) (emphasis added). The trial judge did not make findings on this issue, which, as the majority notes, was disputed at trial. A defense investigator testified outside the presence of the jury that he did not believe Tamra’s gunpowder residue kit was among the physical evidence disclosed by the prosecution, but on cross-examination, he was equivocal, stating, “I can’t say definitely [that it was not], but I do not recall it.” The defense also submitted handwritten notes that one of Kuebler’s former attorneys purportedly took while reviewing the physical evidence. The notes do not list Tamra’s gunpowder residue kit, but they also do not list Kue-bler’s gunpowder residue kit, which the investigator thought was among the physical evidence he saw, potentially calling into question the completeness of the notes. And the author of the notes did not appear at trial to verify or elaborate on them. In addition, one of Kuebler’s trial counsel was present at the meeting with the prosecution, and he argued that the kit had never been disclosed; however, as the State points out, at other times he seemed to be arguing that the State’s obligation was more extensive than to simply disclose the existence of the physical evidence. Finally, I note that the State’s Rule 9.04 discovery disclosures provided a list of “[t]he physical evidence ... relevant to this case,” but did not list Tamra’s gunpowder residue kit. However, for her part, the assistant district attorney was clear, adamant, and consistent that the kit was among the physical evidence disclosed to the defense.
¶ 105. Thus, there is reason to believe that Kuebler was surprised at trial not because any evidence was missing but only because his attorneys overlooked it.[18] Further, the defendant bears the burden of proving that the State failed to disclose the evidence. Cf. Havard v. State, 86 So.3d 896, 900 (¶ 12) (Miss.2012) (Brady claim). However, because the trial court did not make necessary findings of fact bn that issue, I would exercise our authority to remand the case for that limited purpose. See M.R.A.P. 14(b); Howell v. Bd. of Sup’rs of Jefferson Davis Cnty., 70 So.3d 1148, 1154 (¶ 18) (Miss.Ct.App.2011); Brink v. State, 888 So.2d 437, 445 (¶ 21) (Miss.Ct.App.2004); Brown v. Bond, 811 So.2d 238, 240-41 (¶¶ 12-13) (Miss.Ct.App.2000).
Flight Evidence and Instruction
¶ 106. The trial judge did not abuse his discretion by admitting evidence of “flight” or by giving a jury instruction on the *654 issue.[19] The majority concludes that the evidence should not have been admitted because “Kuebler expressed an independent reason for flight — to avoid returning to the detention center.” However, there was no evidence to support the proffered explanation. Kuebler failed to offer any explanation for his flight in his pretrial motion in limine or during the pretrial motions hearing. At the hearing, the assistant district attorney specifically pointed out that Kuebler had “offer[ed] no rational or reasonable explanation for his flight,” and Kuebler’s attorneys had no response. An explanation was first articulated just prior to trial, when Kuebler’s attorneys asserted that after Kuebler was arrested and before he was released on bond, he had been beaten at the Hinds County Detention Center; that while out on bond, he was involved in an auto accident; that “for whatever reason, it was announced to him by [unidentified law enforcement] officers that they were taking him back to jail”; and that Kuebler cut off his ankle monitor and fled to Louisiana because he feared returning to jail. However, there was no proof of this story, which was presented as counsel’s “understanding]” of the facts or what counsel “believe[d]” to be true. The State responded, “This is the first we’ve heard about any accident.” The only “evidence” that Kuebler eventually offered consisted of the bare allegations of a civil complaint — which Kuebler voluntarily dismissed before serving the defendants— and a notation in the jail’s records that Kuebler was injured in an altercation with police on the night of his arrest — which by itself proved nothing because it was undisputed that Kuebler was in an altercation with police at the crime scene. When, even later, the trial judge pointed out that the record still contained “nothing ... to show ... that there was an accident,” Kue-bler’s attorneys promised to produce an insurance report or accident report to substantiate the story. No such report was ever produced.
¶ 107. When the Supreme Court said that “evidence of flight is improper when independent explanations have been offered,” Austin, 784 So.2d at 194 (¶ 25), it surely had in mind explanations with actual evidentiary support, not mere assertions of counsel. In fact, this Court and the Supreme Court have refused to credit explanations that were contradicted or unsupported by the evidence. See Brown v. State, 690 So.2d 276, 294 (Miss.1996); Reynolds v. State, 658 So.2d 852, 856 (Miss.1995); Jackson v. State, 135 So.3d 919, 921 (¶¶ 8-9) (Miss.Ct.App.2013), cert. denied, 136 So.3d 437 (Miss.2014); Jackson v. State, 28 So.3d 638, 641-43 (¶¶ 11-19) (Miss.Ct.App.2009). Given the complete lack of evidence to support Kuebler’s tale, his flight remained “unexplained.” Austin, 784 So.2d at 194 (¶ 24).
¶ 108. Moreover, the trial judge did not abuse his discretion by finding that Kue-bler’s decision to cut off his ankle monitor and flee the state while out on bail facing a murder charge was “at least ‘somewhat probative.’ ” Drummer, 167 So.3d at 1189 (¶ 27) (quoting Reynolds, 658 So.2d at 857); see also id. at 1190 n. 12 (“Our rules of evidence and caselaw allow evidence of unexplained flight if it is somewhat probative and does not fail the Rule 403 balancing test.”). In Ervin, which the majority cites (¶ 31), the Supreme Court “questioned]” the probative value of evidence *655 that the defendant hid from the arresting officers not simply because the “crime ... occurred three weeks prior” but also because “the ‘escapee’ had no knowledge of the crime for which he was being arrested.” Ervin v. State, 136 So.3d 1063, 1060 (¶ 23) (Miss.2014). Here, in contrast, Kue-bler had been indicted and fled the State with full knowledge that he faced life in prison if convicted. I submit that such evidence is “at least somewhat probative” of guilt. Drummer, 167 So.3d at 1189 (¶27), 1190 n. 12. Accordingly, I would hold that the trial judge’s admission of flight evidence and giving a flight instruction were not errors, harmless or otherwise.
Evidence of Tamra’s Drug Use
¶ 109. Although it has been treated as such throughout this case, Tamra’s drug use on the day of the murder is not “character evidence” for purposes of Mississippi Rule of Evidence 404(a). “‘Character’ means a person’s innate ‘tendency’ or ‘disposition’ or ‘propensity5 to act or behave in a certain way.” Parham Williams, Williams on Mississippi Evidence § 4.39, at 4-43 (2013-2014 ed.). Kuebler did not offer evidence that Tamra had a general tendency or propensity to use drugs and, therefore, was likely using and under the influence of drugs at the time of her death; rather, he sought to show that she had in fact been using a variety of drugs and alcohol that entire day, which could have impaired her thinking and contributed to a suicide or accident. That is simply evidence of the actual, same-day events leading up to — and, under Kuebler’s theory of the case, contributing to — her death. It is not evidence of her general “character ... for the purpose of proving that [s]he acted in conformity therewith.” M.R.E. 404(a).
¶ 110. Byrd v. State, 154 Miss. 742, 123 So. 867 (1929), which the majority cites (¶ 51), actually illustrates this difference, holding that the defendant in that ease, who pled self-defense, was entitled to show both that the deceased was “of violent or brawling character ” and was “at the time under the influence of intoxicating liquor.” Id. at 869 (emphasis added). As to the latter, the Court explained that the defendant is entitled “to show all the circumstances under which the fatal difficulty occurred.” Id. Thus, in Byrd, the deceased’s generally violent nature was character evidence, but evidence that he was drunk at the time was simply a fact directly relevant to the “fatal difficulty.” Here, Kuebler did not seek to introduce “character” evidence that Tamra was habitually under the influence of drugs or alcohol or had a history of suicidal thoughts or tendencies; rather, he sought to introduce only direct evidence that she was under the influence of drugs at the time of the “fatal difficulty.”
¶ 111. If Rule 404(a) were the only basis for excluding this evidence, its exclusion would have been error and likely a violation of Kuebler’s due process rights “to present a complete defense” and “to a fair opportunity to defend against the State’s accusations.” California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); Chambers v. Mississippi 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). However, the trial judge also concluded that absent some other evidence — as opposed to speculation— that drug use actually contributed to Tamra’s death, her toxicology report was irrelevant and inadmissible. See M.R.E. 401-403. This ruling was not an abuse of discretion, and thus I agree with the majority that the evidence was properly excluded, although not because it was “character evidence.”
¶ 112. It should be noted that if Kue-bler had testified, his own testimony regarding Tamra’s actions might have been *656 sufficient to establish the relevance of her drug use in the hours leading up to her death. Kuebler had every right to remain silent, but the upshot of his decision not to testify was that he was unable to present the trial judge with competent evidence that Tamra’s drug use contributed to her death in any way. See State v. Mont. Ninth Judicial Dist. Court, 375 Mont. 488, 329 P.3d 603, 606 (¶ 13) (2014) (defendant’s right to remain silent does not permit him to “circumvent well-established rules” of evidence or avoid “hard decisions”).
Evidence that Kuebler Used Racial Slurs
¶ 113. Lastly, I submit that Kuebler did not sufficiently preserve an objection to testimony that he used racial slurs at the time of his arrest. Kuebler filed a pretrial motion in limine seeking to exclude all evidence that he “was belligerent when taken into custody.” No more detail was provided, and at the pretrial motions hearing, Kuebler’s attorney actually downplayed the incident: “[H]e was upset, because the police would not come in and try to help the decedent..., He was just kind of wild and saying come and help her.... He was not belligerent at the policemen.... ” (Emphasis added). There is no indication that the trial judge was provided with any more detail prior to trial regarding the officers’ anticipated testimony, and there appears to have been only one contemporaneous objection to the testimony regarding racial slurs, which the trial judge sustained. “In order to raise an error on appeal, ... a contemporaneous objection on specific grounds must be made to the admission of evidence by the trial court.” Denson v. State, 746 So.2d 927, 931-32 (¶ 17) (Miss.Ct.App.1999) (emphasis added). “The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision.” Moffett v. State, 49 So.3d 1073, 1088 (¶ 41) (Miss.2010) (quoting Mills v. Nichols, 467 So.2d 924, 931 (Miss.1985)). Kuebler’s generalized pretrial objection to evidence of his “belligerence” and resistance to arrest — which is at least minimally relevant — was not sufficient to put the trial judge on notice and to preserve an objection to specific testimony that Kuebler used racial slurs. See Kettle v. State, 641 So.2d 746, 748-49 (Miss.1994) (a pretrial motion in limine must be “specific” to preserve an issue for appeal absent a contemporaneous objection at trial). This is particularly true in this case given that the trial judge actually sustained an early objection to the sort of testimony now at issue.
¶114. I differ with the majority because I conclude that, if there had been a proper objection, it would have been an abuse of discretion to allow the testimony. In Tate v. State, 784 So.2d 208 (Miss.2001), the Supreme Court held that the trial judge abused his discretion by admitting evidence that the defendant used racial slurs while talking to two deputy sheriffs two to three hours after the alleged assault with which he was charged. See id. at 213-15 (¶¶ 19-29). The Court held that “[t]he probative value, if any, of [the] alleged racial slurs ... was clearly ‘substantially outweighed’ by the danger of unfair prejudice.” Id. at 215 (¶ 29). While there are factual differences between this case and Tate, none changes the basic point that racial slurs uttered to law enforcement officers after an alleged crime are highly prejudicial and generally irrelevant to the question whether the defendant committed the crime. As the majority says (see ¶¶ 68-69), Kuebler’s “resistance to arrest” and refusal to “cooperate” with the police was relevant, which is why I do not take issue with the trial judge’s denial, prior to trial, of Kuebler’s broad motion in limine to exclude all evidence of his “belligerence.” However, I cannot see how the *657 racial slurs that-Kuebler directed at the officers are “evidence of consciousness of guilt” (¶ 69) or how the jury would have been “confuse[d]” by their omission from the officers’ testimony (¶ 68). The admission of this testimony is not error only because there was no contemporaneous objection sufficient to preserve the issue on appeal.
Conclusion
¶ 115. For the reasons discussed above, I would remand the case for the limited purpose of having the trial court make necessary findings of fact regarding whethef a discovery violation occurred'. Except for this issue and the three others discussed above, I generally concur in the majority’s discussion and resolution of Kuebler’s other claims on appeal.
ISHEE, J., JOINS THIS OPINION. ■ CARLTON, J., JOINS THIS OPINION IN PART WITH SEPARATE WRITTEN OPINION.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Kuebler’s lead trial counsel entered an appearance and apparently began work on the case the week of trial and so was not involved in discovery or the pretrial inspection of the physical evidence.

. See Drummer v. State, 167 So.3d 1180, 1186 (¶ 19) (Miss.2015) (giving a flight instruction is reviewed for abuse of discretion); Austin v. State, 784 So.2d 186, 193 (¶ 23) (Miss.2001) (admission of flight evidence is reviewed for abuse of discretion); Mack v. State, 650 So.2d 1289, 1310 (Miss.1994) (recognizing that the admissibility of flight evidence and the propriety of a flight instruction raise essentially the same question).