ON WRIT OF CERTIORARI

RANDOLPH, Presiding Justice,
for the Court:
¶ 1. Michael Anderson was charged with deliberate-design murder, aggravated assault, and being a felon in possession of a firearm. . His sole theory of defense was self-defense. Oyer Anderson’s objection, the prosecution was granted its requested flight instruction. Anderson was convicted on all- three counts and received three .consecutive life sentences. The Court, of Appeals affirmed .the convictions and sentences.[1] On petition for certiorari, Anderson argues that the trial court erred by, giving the flight-instruction. Because no evidence was introduced to support that Anderson’s flight was caused by something other than - consciousness of guilt, e.g,, to avoid- retaliation, the- trial court did not err. The judgments of the Court of Appeals and the Circuit Court of the First Judicial District of Hinds County are affirmed.

FACTS AND PROCEDURAL HISTORY

¶ 2. Late one night, Sylvester Coleman, Drystle Sanders, Ernestine Coleman, Wy-sia Sanders, and Travis Brown[2] went to the-Triple-A Store in Jackson.' Sylvester and Drystle went inside while the others stayed in the car. Anderson entered the store soon after.
¶ 3. According to Anderson, Drystle became agitated when Anderson began talking about the women in the car. Drystle left the store. When Anderson later came out, Drystle struck him in the head. The two began “tussling.” Anderson testified that, during the struggle, he heard “metal against metal” -of a handgun' falling onto the ground. He picked it up and shot Drystle several times. No one else heard the conversation, if any, that took place inside the store, and while no one else saw how the “tussle" began, multiple witnesses described subsequent events.
¶ 4. Ernestine testified she heard shots and looked up in the parking lot to see Drystle falling. Sylvester came out of the store and took off running as Ernestine, who was driving the car, pulled out of the parking lot, following her son. Anderson was still in the parking lot when they left. Sylvester testified that, when he came out of the store, Anderson started shooting at him. Sylvester took off running, yelling at his mother to get out of the parking lot. She pulled away in the. car,[3] leaving Anderson in the lot. Travis testified that he saw Drystle and Anderson fighting. Travis looked down to try to unlock the doors, heard shots, looked up,' and saw Drystle falling. Travis saw Anderson firing at Sylvester as Sylvester exited the store. Sylvester ran as Ernestine cranked *969 the car and left behind him, leaving Anderson in the lot. All three testified they saw Anderson later walking down Ridgeway Street away from the store as they drove up the street, -back toward the store after making a block. ■ Anderson fired at their car as they passed, Wysia’s testimony was essentially the same as the other occupants in the car. AH'four testified that only Anderson had a gun.
¶ 5. In addition, two unrelated and' disinterested witnesses, off-duty Jackson Police Department Investigator Garland Ward and Stephen Johnson, witnessed the murder. Investigator Ward was leaving an establishment next door to the store when he heard a commotion in the nearby lot. As he approached, he heard two shots. He saw Drystle fall, and he saw Anderson stand over Drystle — who was lying on the ground — and aim the gun at him. Ward saw Sylvester running from the store yelling at the occupants of the car to “get down.” Ward, off-duty and without a weapon, was calling, an on-duty investigator when he heard more shots. He looked back at the scene and saw Anderson walking away from the store and down the road.
¶ 6. Stephen Johnson was driving past the store when he saw Drystle lying on the ground. As Johnson pulled into the lot, he saw Anderson stand over Drystle and fire two more shots. The first misfired, but the State’s expert pathologist identified the second as the fatal shot.[4] Johnson testified no one else was in the parking lot at the time except for Johnson, Anderson, and Drystle.[5] Johnson stated that Anderson walked off with the gun. As he was leaving, Johnson heard more shots coming from down Ridgeway.
¶ 7. Anderson was indicted as a habitual offender under Mississippi Code Section 99-19-83 on three felony counts: deliberate-design murder for the death of Drystle Sanders, aggravated assault for shooting at Sylvester Coleman, and being a felon in possession of a firearm. Anderson’s sole theory of defense was self-defense. He was granted a self-defense instruction but was denied an imperfect seif-defense instruction in regard to the aggravated-assault charge. The trial court granted the State’s request that the jury be instructed that self-defense cannot be a defense to felon in possession of a firearm. Over a defense objection, the court granted the State’s flight instruction.
¶ 8. The jury convicted Anderson of all three counts. He was sentenced as a habitual offender to three 'consecutive life sentences without the possibility of parole. He appealed, arguing the trial court erred by (1) giving the flight, instruction, (2) instructing the jury that self-defense is not a defense to felon in possession of a firearm, and (3) excluding evidence of Drystle’s intoxication. The Court of' Appeals affirmed. Anderson filed a petition for writ of certiorari, which" we granted on one issue:
Whether the trial court erred by giving a flight instruction when Anderson claimed self-defense.
¶ 9. Jury instructions are reviewed for an abuse of discretion. Drummer v. State, 167 So.3d 1180, 1186 (Miss.2015).
*970 ¶ 10. Anderson argues a flight instruction cannot be given if the defendant claims self-defense. However, the assertion of self-defense does not, ipso jure, preclude a trial court from granting a flight instruction. A flight instruction maybe given if “that flight is unexplained and somehow probative of guilt or guilty knowledge.” Reynolds v. State, 658 So.2d 852, 856 (Miss.1995). See also Pannell v. State, 455 So.2d 785, 788 (Miss.1984).[6] Probative is defined as “tending or serving to prove.” Brian A. Garner, A Dictionary of Modem Legal Usage 694 (2nd ed.200Í). See also Probative, Black’s Law Dictionary (10th ed.2014) (“tending to prove or disprove”). Therefore, unexplained flight need only “tend to prove” guilt or guilty knowledge to satisfy the Reynolds probative requirement.
¶ 11. A trial. judge must first determine whether the evidence of flight is probative. Drummer, 167 So.3d at 1190 n. 12. If the trial judge determines the evidence of flight is probative, he sends, the issue to the jury for appropriate weighing (“to prove or disprove”). Id. If requested, the court may properly instruct the jury that flight, if .found beyond a reasonable doubt, is a circumstance from which an inference of guilt may be drawn and caution the jury that it must consider all the evidence presented. See id. at 1189.
¶ 12. Justice Kitchens’s dissent conflates the terms “presumption” and “inference,” yet this Court clearly distinguishes the two:
we consider the distinctive differences between “infer” and “presume.” “Infer” is.defined as “to conclude from certain premises or evidence.” By this definition, a jury may not make an inference without evidence adduced at trial to support that inference. However, [the instruction at issue in Williams] did not use “infer” but instead used “presume,” which is defined as “to assume to be true without proof to the contrary.” “Assume” is analogous to “presume” and “stresses] the arbitrary acceptance as true of something which has not yet been proved.”
Williams v. State, 111 So.3d 620, 625 (Miss.2013) (internal citations omitted). We agree the jury should, never be told it can presume guilt; such would be “constitutionally untenable.” See Dis. Op. ¶ 30. However, juries may be told they can infer guilt from probative, unexplained flight. See Reynolds, 658 So.2d at 856; Drummer, 167 So.3d at 1188.
¶ 13. Evidence of Anderson’s flight was offered, The trial court determined it was probative and allowed the jury to consider it. The State requested a flight instruction. The trial court, in its discretion, granted the instruction, informing the jury that if it' found beyond a reasonable doubt that Anderson had fled, it could infer “guilty knowledge or fear of arrest” from that flight. The court further instructed the jury that it must consider all the evidence in determining the weight to assign to Anderson’s flight. A .trial judge is in the best position to determine *971 whether the flight had probative. value, sufficient to send the issue to the jury, based on the evidence adduced at trial. See Houston v. State, 776 So.2d 695, 697 (Miss.Ct.App.2000) (“The trial judge saw these witnesses testify. Not only did he have the benefit of their words, he. alone among the judiciary observed their manner and demeanor. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.”). We And no abuse of discretion in his doing so.
¶ 14. On multiple occasions, this Court has addressed the giving of flight instructions when a defendant claims self-defense.[7] In Banks, Banks was arguing with the-victim’s cousin when the victim. interjected himself into the argument. Banks, 631 So.2d at 749. Banks claimed the victim approached him during the argument and drew a pistol. Id. Banks then stabbed him. Id. The victim, ran off with the pistol, the cousin threatened to kill Banks, and Banks fled. Id. at 751. Furthermore, the cousin admitted at. trial that he had threatened to kill Banks after the stabbing. Id. Given the facts of that case, the Court found that a flight instruction was improper. Evidence was adduced supporting Banks’s flight, which led the Banks court to conclude: “[Banks] was leaving based on threats from [the victim’s cousin] and on the alleged danger from the victim[.]” Id. In so finding, the Court, stated:
A flight instruction will have particular prejudicial effect in a case where self-defense is argued. Where the person against whom self defense has been exercised is still.alive and has the back up support of ofher persons, flight seems logical and necessary. In other .words, in the present, case it would seem to have been illogical for Banks not to run.
Id. (emphasis added).[8]
¶ 15. Our decision in Shumpert evinces the obvious distinction between Banks and Tran on the one hand (defendant claiming self-defense with evidence explaining his flight) and Anderson on the other (defendant claiming self-defense but no evidence being adduced to" explain his flight). See Shumpert, 935 So.2d at 970. In Shumpert, the defendant claimed self-defense and claimed to have fled the scene to avoid retribution. Id. However, the Shumpert court found that the trial court did not err in granting a flight instruction because “flight was not explained by any reason other than consciousness. of guilt.” Id. Although Shumpert argued he fled to avoid being harmed by the victim, the trial court found a lack of evidence to support flight[9] (and this Court agreed);[10] this is *972 diametrically opposed to the Banks Court finding that flight was not only logical but necessary. See id.; Banks, 631 So.2d at 751.
¶ 16. We need only compare today’s facts to those in Banks and Shumpert to determine which case controls today’s decision. Given the testimony in Banks, the Banks holding was well-founded: a flight instruction should not be granted where the defendant claims- self-defense and “the person against whom self defense-has been exercised is still alive and has the back up support of other persons.” Id. Flight in such a situation seems logical and necessary. However, the facts developed in Anderson’s case do not support the same result.
¶ 17. Anderson’s facts are more akin to Shumpert, where a flight instruction was granted, notwithstanding the defendant’s claim of self-defense. Anderson, like Shumpert, lacks evidence to support a claim that his flight was caused by a fear of retaliation.
¶ 18. The only similarity in Banks, Tran, and today’s case is- that Anderson claimed self-defense. No evidence was adduced that Anderson’s flight was “logical and necessary,” or that he fled for any other reason unrelated to consciousness of guilt. See Banks, 631 So.2d at 751: An explanation for Anderson’s flight is nowhere to be found in the record before us. The record reflects that no one other than Anderson was armed during or after- the shooting. The record reflects that no one threatened to retaliate. Certainly the victim'could hot have, for he lay dying on the ground. The victim’s unarmed companions sped,.off in a car or took off running as Anderson continued shooting toward Sylvester' before Anderson himself fled the scene. The record reflects, through the testimony of multiple witnesses, that Anderson left the -scene after Sylvester ran off and after the car drove away. Whereas “it would have been illogical for Banks not to run,” there was no reason for Anderson to run, except to avoid apprehension by law enforcement, ie., consciousness of guilt. See id.
¶ 19. Finally, pertinent to our search for the truth, Anderson’s own testimony belies fear of retaliation. No witness testified that anyone other than Anderson was armed after- the murder. With everyone gone and the victim lying on the sidewalk, Anderson testified he dropped the gun and walked away.
¶ 20. No different than Shumpert, the evidence presented’ in today’s case fails to explain flight for any logical or necessary reason. While this Court found flight was logical and necessary in Banks and Tran, Anderson’s flight, like Shumpert’s, was unexplained to the trial judge and jury. As Anderson’s flight from the murder scene was unexplained, the. State’s requested flight instruction comports with our existing law.

CONCLUSION

¶ 21. Assuredly, flight instructions should not be granted where the defendant claims self-defense and sufficient evidence is introduced which explains that the defendant’s flight was caused by something other than a consciousness of guilt, e.g., to avoid retaliation. See Shumpert, 935 So.2d 962; Tran, 681 So.2d 514; Banks, 631 So.2d 748. The record before us today offers no evidence that Anderson’s flight was .to ayoid retaliation. Thus the trial court did not err in granting a flight instruction. The judgments of the trial court and the Court of Appeals, including *973 Anderson’s convictions and sentences, are affirmed.
¶22. THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY ARE AFFIRMED. CONVICTIONS OF MURDER, AGGRAVATED ASSAULT AND FELON IN POSSESSION OF A WEAPON AND SENTENCES FOR EACH OF LIFE, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.
CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. DICKINSÓN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY' KITCHENS AND KING, JJ. KITCHENS, J, DISSENTS WITH [SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND KING, J.

. Ernestine is Sylvester’s mother, Wysia is Drystle’s mother, and Travis is Sylvester's step-brother.

. Sylvester testified that the car was white.

. The pathologist also testified the initial shots to the lower body were not fatal. The shot to the chest was fatal, and the trajectory was consistent with the victim being shot lying down, facing up. The shot to the chest was consistent with being shot at close range. The shots to the lower body could" not have happened while the victim was on his back.

. Johnson testified a dark-colored car was leaving the lot as Johnson was pulling in.

. Earlier this year, we affirmed the giving of a flight instruction and reaffirmed "the two-part unexplained-and-probative test” used in Pannell. Drummer, 167 So.3d at 1188. We noted that "[i]ndeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt.” Id. at 1189 (citing Allen v. United States, 164 U.S. 492, 499, 17 S.Ct. 154, 41 L.Ed. 528 (1896)). Specifically, "the demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence." Id. (citing Williams v. State, 667 So.2d 15, 22 (Miss.1996)). Conversely, we have reversed the giving of flight instructions for various reasons; however none of these reasons is present here. See id.

. Shumpert v. State, 935 So.2d 962 (Miss.2006); Tran v. State, 681 So.2d 514 (Miss.1996); Banks v. State, 631 So.2d 748 (Miss.1994).

. Two years after Banks, this Court held again that a flight instruction was not warranted in a self-defense case because evidence was adduced that the defendant fled out of fear of retribution. See Tran, 681 So.2d at 519 ("Tran's flight was explained by both himself and his co-defendant — they were fleeing to avoid retribution from the friends of [the victim].”). Tran’s ‘ claim of fear of retaliation was corroborated by his codefendant. Id.

. A witness testified that the victim had not harmed Shumpert, and a weapon was not found on the victim’s body. Shumpert, 935 So.2d at 970.

. In Shumpert, we recognized that Tran disapproved a flight instruction where self-defense was asserted, pointing out that Tran and Banks apply when the defendant claims self-defense and' evidence is adduced that the defendant fled in fear - of retaliation. Even though Shumpert asserted self-defense, every justice then serving on this Court agreed that the flight instruction was properly granted because "the flight was not explained by any *972 reason other than consciousness of guilt.” Id.