PRATHER, Justice, for the Court:
I.INTRODUCTION
In October 1988, the Jackson County Grand Jury indicted Willie Robert Evans under Miss.Code Ann. § 97-3-65(1) (1990 Supp.) for the rape of his daughter, Cecilia (a fictitious name).
Judge Robert T. Mills held trial on May 15, 1989, at the Jackson County Circuit Court — after which the jury found Willie guilty. Judge Mills sentenced Willie to life imprisonment.
Willie appealed and presented the following issues for disposition:
1. “That the evidence adduced at trial, seen in the light most favorable to the State, has neither the sufficiency, nor the weight to sustain a conviction and the trial court erred in overruling Appellant’s motion for a directed verdict and his motion for a new trial or a judgment notwithstanding the verdict.”
2. “That the trial court erred in submitting Instructions S-4 and S-5 over Appellant’s objection and in refusing Instructions D-l and D-3.”
3. “That Appellant should have been tried and sentenced under Mississippi Code Annotated Section 97-29-5 (1972) which prohibits fornication between certain persons forbidden to intermarry, rather than under Miss.Code Ann. Section 97-3-65(1).”
II. ANALYSIS
A. Issue # 1: Whether Judge Mills Erred in Refusing to Grant Willie’s Motions for a Directed Verdict and J.N.O.V?
1.
In order to decide this issue, the facts will now be recounted.
At trial, 13-year-old Cecilia testified first. She testified that, from around 1984 to September 1988, sex with her father became a routine event (approximately two to four times monthly) at her Moss Point home. She described the routine accordingly: (1) She and her 11-year-old sister, Margaret (a fictitious name), would come *1247 home from school; (2) Her mother would be at work; (3) Her father would tell Margaret to go outside and play or clean the carport; (4) After Margaret exited the house, her father would tell her to go into a bedroom, “take off” her clothes, and “lay in bed”; (5) After she did this, her father would “get on top of [her]” and “have sex.” Cecilia explained that he “would take his private parts and put it into [her] private parts.” She then specified that he would take his penis and put it into [her] vagina.” She did not know if he completed the act of intercourse.
Cecilia never told anyone about these events because she “was afraid [of] what he would do to [her] and [her] family.” However, she finally told her mother after her mother repeatedly asked why she had written a letter to a friend, Robert (a fictitious name). Her mother had intercepted the letter and her father “whipped” her for writing it; the exact content of this letter, however, was never revealed at trial. Cecilia finally testified that her mother took her to Dr. John Allgood, a family practitioner, for an examination and a pregnancy test. Her mother then took her to the police station, where she told officers about the events. Cecilia added that, in the end, her father “said that he was sorry that he did that to [her].”
Dr. Allgood testified next. Allgood examined Cecilia approximately three months after her father had last raped her. All-good explained that the results of the examination neither confirmed nor contradicted Cecilia’s revelation. He did note that the hymen was not intact, but that this may not have been the result of a rape.
Margaret (Cecilia’s sister) testified after Allgood. Margaret basically corroborated Cecilia’s story to the extent that: (1) About two or three times a month while her mother was at work, her father would “ask” her to go outside and clean the carport; and (2) When she attempted to re-enter the house, the doors would be locked and “no one would let [her] in.”
Betty Evans (a fictitious name), Cecilia’s mother, testified next. She corroborated Cecilia’s story to the extent that: (1) She intercepted a letter written by Cecilia to a Robert; (2) She showed Willie the letter, after which he whipped Cecilia; (3) She then persistently asked Cecilia why she wrote the letter and why “her daddy might have been whipping her about it”; (4) Cecilia finally told her that he (Willie) “didn’t want her ... to get her a boyfriend because of what he had did to her”; (5) Cecilia explained that “her daddy made her go to bed with him and take her clothes off”; and (6) She took Cecilia to the police station to report the events.
Betty also testified that, after Cecilia revealed the events to her, she took Cecilia to school and returned home to confront Willie. When Betty confronted him, he refused to talk about it. She then told him that they would discuss it further when Cecilia came home from school; however, Willie left the house immediately and never returned.
Betty added that Willie eventually telephoned her and told her he was calling from South Carolina, but she later learned that he was actually calling from Virginia.[1] Willie also called her from Florida where he was arrested. During at least one of these phone calls, Willie “admitted that he had did it.” When she told him she was concerned he could have made Cecilia pregnant, he responded that she need not worry “because he didn’t go all the way” (i.e., “he said he ‘barely put the head in’ ”).
Willie testified next. Willie simply denied that he was guilty or that he had admitted guilt to Betty. He testified that, after being confronted by Betty about Cecilia’s “allegation,” he fled to Virginia and other places because he was “shocked,” “confused,” and “frightened.” He then decided that he would return to Mississippi to “get this straightened out”; however, he was arrested in Florida while en route.
Detective Danny Watson of the Moss Point Police Department simply testified that he investigated the events after being told about the allegations by Betty. Surprisingly, the attorneys did not elicit many *1248 answers from Watson; therefore, he provided little information.
Finally, Jimmy Claude Miles Sr. testified as a character witness. Miles testified that he had worked with Willie for about one year prior to the time Willie fled Moss Point. He added that Willie’s “reputation for truth and honesty” at work was “very good.”
2.
Basically, Willie contends that his directed-verdict and J.N.O.V. motions should have been granted because: (1) Cecilia's testimony reflects a “[mis]under-standing of what sex is”; and (2) Actual proof of the crime is non-existent.
The State, of course, disagrees and contends that the record contains sufficient evidence which proves Willie’s guilt beyond a reasonable doubt.
3.
The familiar standards applicable to this Court’s review of a denial of motions for a directed verdict and a J.N.O.V. need not be recited. See, e.g., Brock v. State, 530 So.2d 146, 158-54 (Miss.1988) (discussing applicable standards).
Applying these standards to the facts recounted in the preceding section, this Court concludes that Judge Mills properly denied Willie’s motions.
B. Issue #2: Whether Judge Mills Erred With Regard to the Granting and Rejecting of Various Instructions?
1. Instructions S-4 & S-5

(a)

Willie first contends that the judge erroneously granted so-called “flight” instructions (S-4 & S-5):
JURY INSTRUCTION S-4
The Court instructs the Jury that Flight is the evading of the course of justice by voluntarily withdrawing one’s self in order to avoid arrest of detention or the institution or continuance of criminal proceedings, regardless of whether one leaves the jurisdiction.
JURY INSTRUCTION S-5
The Court instructs the Jury that Flight is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, WILLIE ROBERT EVANS, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant, Willie Robert Evans.
Willie explains that a flight instruction may be given only when the following two-prong test is met: (1) The flight is unexplained; and (2) The evidence of flight has probative value. Appellant’s Brief at 8 (citing Lightsey v. State, 493 So.2d 375 (Miss. 1986); Pannell v. State, 455 So.2d 785 (Miss.1984)). According to Willie, he explained his flight from Moss Point — i.e., he was “shocked,” “confused,” and “frightened,” after being confronted about Cecilia’s allegation. Moreover, whatever “value it had [was] greatly outweighed by its prejudicial effect.”
The State contends that the evidence meets the two-prong test:
Insofar as [Willie] stated that fear caused him to flee, this of course is a statement of the obvious, which may be assigned as the reason that causes both the innocent and guilty to flee. But it does not mean much when it comes to explaining flight: [Willie] did not show that there was an independent reason for the flight, which reason would allow for a conclusion of an innocent purpose; nor did he deny the State’s evidence that he did flee and that he did lie about his whereabouts while on the lam. Consequently, it is not true that there was an explanation for the flight.
Appellee’s Brief at 11-12 (citing Lightsey, 493 So.2d at 375).

*1249
(b)

In the rape case of Brock v. State, this Court found no error in the granting of a similar flight instruction because the appellant’s explanation was “contradicted and [had] no support outside his own testimony.” 530 So.2d at 153. In the case sub judice, Willie’s uncorroborated explanation is contradicted by Betty who testified Willie admitted to her via telephone that he had had sex with Cecilia. The State thus deduced that Willie fled because he was guilty. The issue became a factual one for the jury to resolve. In light of Brock, the judge properly granted the instructions, and this Court affirms.

2. Instruction D-l

Willie next contends that the judge erred in refusing to grant D-l, a peremptory instruction.
The standard of review applicable to a denial of a peremptory instruction is the same standard applicable to a denial of a directed-verdict motion. Therefore, the analysis provided in Section 11(A) of this opinion — vis-á-vis Issue # 1 — is relevant here and need not be recited.

8. Instruction D-3

Finally, Willie contends that the judge erred in refusing his “reasonable doubt” instruction (D-3):
JURY INSTRUCTION NO. D-3
The Court instructs the Jury that a verdict of Not Guilty means that you are not satisfied that the prosecution has proven the Defendant’s guilt beyond a reasonable doubt. You need not be convinced that the Defendant is innocent before you may return a verdict of Not Guilty. To return a verdict of Not Guilty, it is only necessary that you have a reasonable doubt as to the guilt of the Defendant, Willie Robert Evans.
For support, Willie simply explains that this Court has held that “a proper reasonable doubt instruction in a rape case where the evidence is close should be given.” Appellant’s Brief at 9-10 (citing Carr v. State, 208 So.2d 886 (Miss.1968)).
The State counters that D-3 was refused because “the point to which it was addressed was covered by other instructions in the case.” For example, Instruction C-3 explains:
JURY INSTRUCTION NO. C-3
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty the State must prove that the defendant is guilty beyond a reasonable doubt. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.
Thus, the State concluded that a judge “is not required to instruct a jury more than once on a principle of law.” Appellee’s Brief at 12-13 (citing Laney v. State, 486 So.2d 1242 (Miss.1986)).
This Court affirms the judge’s refusal to grant D-3 for the simple reason that Instruction C-3 encompasses D-3.

C. Issue #3: Whether Willie Should Have Been Tried Under Miss.Code Ann. § 97-29-5 (1972) rather than § 97-3-65(1)?

Because Willie did not raise this issue at the trial level, this Court will not address it.
III. CONCLUSION
For the foregoing reasons, this Court affirms Willie’s conviction.
CONVICTION OF RAPE OF CHILD UNDER FOURTEEN YEARS OF AGE AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.

. Betty’s phone bill revealed that he was calling from Virginia (he had called her "collect”).