631 So.2d 748 (1994)
Anthony BANKS
v.
STATE of Mississippi.
No. 91-KA-0851.
Supreme Court of Mississippi.
January 20, 1994.
Tom T. Ross, Jr., Ross Hunt Spell & Ross, Clarksdale, for appellant.
Michael C. Moore, Atty. Gen., Jean Smith Vaughan, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
SMITH, Justice, for the Court:
Anthony Banks was convicted in the Circuit Court of Coahoma County of aggravated assault and sentenced to ten years with four years suspended and ordered to pay $3,000 in restitution to the victim. Banks admitted stabbing Dennis Thompson in a parking lot confrontation outside the apartment of Banks' girlfriend.
Danny Hill, an investigator for the Coahoma County Sheriff's Department, took a statement from Banks in which he admitted the stabbing. Based on an objection by the prosecution, the court limited Hill's trial testimony concerning Banks' statement to discussion of the stabbing and to self-defense. The transcript of Banks' statement was not allowed to be admitted into evidence. Included in the statement was Banks' explanation of why he ran after the stabbing. Banks subsequently testified and was not asked about his statement explaining his running. The Court granted a "flight instruction" over the objection of the defense.
On appeal Banks argues the following:
THE COURT ERRED IN NOT ALLOWING THE DEFENDANT TO CROSS-EXAMINE THE STATE'S WITNESS, DANNY HILL, REGARDING THE ENTIRE STATEMENT OF ANTHONY BANKS DURING BANKS' CROSS-EXAMINATION OF DANNY HILL.
THE TRIAL COURT ERRED IN ALLOWING A "FLIGHT INSTRUCTION" OVER OBJECTION OF COUNSEL.
This Court finds that both assignments of error have merit. The lower court erred in limiting Hill's the testimony regarding Banks' statement and in excluding the statement from evidence. In doing so, the court *749 precluded the jury from hearing Banks' contemporaneous explanation of the events, including his reason for flight. Even without this statement, there was sufficient evidence touching on Banks' running that giving the flight instruction was error. This case will be reversed and remanded for a new trial.

THE FACTS
Anthony Banks was indicted for the crime of aggravated assault in the stabbing of Dennis Thompson with a knife. Banks had quarrelled with Patrick Thompson, the cousin of the victim Dennis Thompson, over Patrick's estranged wife, Sharon Thompson. Dennis interjected himself into the argument and was stabbed four times by Banks. Banks claimed that Dennis had a gun.
On April 20, 1991, Anthony Banks was at the Sunflower Land Apartments with Sharon Thompson, talking in the bedroom. According to Banks, he was using a kitchen knife to fix a radio. Patrick Thompson, Sharon's estranged husband, came over and Banks went into another room.
Patrick came to the apartment to retrieve some of his clothes. He and Sharon argued. As he was leaving he took some Pampers he had bought and went to his car. As Patrick was backing out of a parking space, he hit the car behind him because his view was blocked by the Pampers. Sharon came out and took some of Patrick's clothes in retaliation for his taking the Pampers. Later, Banks saw Patrick take something out of the trunk of a maroon car and make "a motion like he was putting something down in his pants."
As Banks was leaving the apartment, Patrick called to him and Banks walked over to the car. Banks still had the knife with him, stuck inside his overalls. Patrick started telling Banks to leave Sharon alone. After about five or six minutes, Dennis Thompson came over. Banks claimed that he saw the black handle of a pistol hanging out of the front of Dennis' pants. Banks said that he was steadily backing away from Dennis until Dennis came and stood close to him and drew the pistol. It was at this point that Banks said he pulled the knife and stabbed Dennis. Banks does not remember stabbing Dennis but once. Dennis first bent over and then took off running. According to Banks, Patrick then threatened to kill him and Banks ran. Banks says he threw the knife between some houses and ran to his aunt's house. Two days later Banks turned himself in to the police.
Banks, after being advised of his rights, gave a statement to Danny Hill with the Coahoma County Sheriff's Department. In the statement, Banks admitted stabbing Dennis Thompson. On cross-examination at trial, Hill was given a transcript of the taped statement by Banks. Hill stated that the transcript was an accurate transcription as far as he could tell. Hill stated that Banks said that the victim was handed something out of a car trunk by another person immediately prior to the stabbing. Also, when Banks tried to walk away, the victim started walking toward Banks with a black handled pistol hanging out of his pants, he threatened Banks, and continued walking toward him. Hill also read from the transcript that Banks said he was attempting to leave the scene of the argument when Dennis threatened him saying that he was "fixing to die." When the victim tried to pull the pistol, Banks stabbed him in self-defense. When the defense sought to have Hill go further into Banks' statement, the prosecution objected. The court ruled that the entire statement could not be brought out on cross examination and limited the defense to showing that the stabbing was in self-defense. The statement was not allowed into evidence but was proffered.

DISCUSSION

I.

THE COURT ERRED IN NOT ALLOWING THE DEFENDANT TO CROSS-EXAMINE THE STATE'S WITNESS, DANNY HILL, REGARDING THE ENTIRE STATEMENT OF ANTHONY BANKS DURING Banks' CROSS-EXAMINATION OF DANNY HILL.
Banks complains that because his cross-examination of Danny Hill was limited and part of Banks' pretrial statement was not disclosed to the jury, the defense was *750 unable to show that Banks' pretrial statement and his trial testimony were consistent. Banks argues that as a result he was denied a fair trial.
Danny Hill, the investigator with the Coahoma County Sheriff's Department who took the recorded statement from Banks, was allowed to testify on cross-examination as to Banks' statement of the events leading up to the stabbing. The State objected to Hill being allowed to put in the entire statement by having the officer read it. The State objected to "this self-serving stuff, that is strictly the Defendant's version of what happened." The State also objected to the statement as hearsay. The objection was to the manner in which the cross-examination was being conducted. The court ruled that the defense could use the statement to establish necessary self-defense or "events that occurred at the time of the stabbing." The court also stated that it was not aware of what was in the entire statement.
The court allowed a proffer of the statement. Later the defense offered the full statement into evidence. The State objected that there were things in the statement which had not been gone into on cross-examination and therefore the statement was not admissible. The court stuck with its earlier ruling and did not allow the entire statement in evidence.
The area that the defense could have used in its cross-examination of Hill was the portion of the statement concerning Banks' actions after the stabbing. In particular, Patrick Thompsons' threat to Banks, Banks' reason for fleeing the scene after the stabbing and the consistency of this statement with Banks' testimony at trial could have been used. As this Court stated in Davis v. State, 230 Miss. 183, 188, 92 So.2d 359, 361 (1957):
It is an elementary rule of law that when admissions of one on trial for the commission of a criminal offense are allowed in evidence against him, all that he said in that connection must be permitted to go to the jury either through the cross-examination of the witness who testified to the admission or through witnesses produced by the accused. Moreover, the fact the declarations were made by the accused were self serving does not preclude their introduction in evidence as part of his whole statement, if they are relevant to statements introduced by the state and were made on the same occasion as the statements introduced by the state.
See also, Sanders v. State, 237 Miss. 772, 115 So.2d 145 (1959); M.R.E. 106.
Banks argues correctly that the scope of cross-examination is ordinarily broad and that the trial court in its discretion has the inherent power to limit cross-examination to relevant matters. Sayles v. State, 552 So.2d 1383 (Miss. 1989). "Also, under M.R.E. 103(a), before error can be predicated at all upon an adverse evidentiary ruling it must appear that a substantial right of the party is affected." Id. at 1387.
The judge's action in limiting the use of the transcript of Banks' statement during the testimony of Officer Hill was an infringement of the right of cross-examination. The statement was relevant to show the full story of what happened and to show that Banks' contemporaneous statement as to what occurred was consistent with his testimony at trial. The court was wrong to limit Banks in the extent of his use of the transcription of his statement to the police and in the specific cross-examination of Hill. This assignment by Banks is meritorious and we hold it to be reversible error.

II.

THE TRIAL COURT ERRED IN ALLOWING A "FLIGHT INSTRUCTION" OVER OBJECTION OF COUNSEL.
The court granted Jury Instruction S-3 which states as follows:
Flight is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendant, ANTHONY BANKS, did flee or go into hiding, such flight or hiding may be considered in connection with all other evidence in the case. You may determine from all the facts, whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things *751 and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant.
There is no dispute that Banks fled the scene after the stabbing took place. There is also no dispute that Patrick Thompson threatened Banks after the stabbing and went searching for a weapon to use. Banks testified that Thompson told him that he was "fixing to kill me." Patrick also admitted on the witness stand that he threatened Banks with bodily harm and went to his car searching for a tire iron. Further, in Banks' version of the story Dennis, although wounded, was still armed with a pistol.
The history of the evolution of the flight instruction was set out by this Court in Pannell v. State, 455 So.2d 785 (Miss. 1984). The Court found that there were two considerations in deciding whether to grant a flight instruction:
(1) Only unexplained flight merits a flight instruction.
(2) Flight instructions are to be given only in cases where that circumstance has considerable probative value.
Id. at 788. See also Pharr v. State, 465 So.2d 294 (Miss. 1984) and Fuselier v. State, 468 So.2d 45 (Miss. 1985).
In Pannell the Court found that there was no probative value in the alleged flight to any element of the crime.
The present case does not fall within either of the circumstances where a flight instruction would be appropriate or warranted. Banks' flight was amply explained. He was leaving based on threats from Patrick and on the alleged danger from the victim Dennis.
The circumstances of the present case are unlike those in Evans v. State, 579 So.2d 1246 (Miss. 1991) where the defendant's explanation was uncorroborated and contradicted by another witness. There the evidence of flight was probative of the defendant's knowledge of his guilt. In Brock v. State, 530 So.2d 146 (Miss. 1988), a flight instruction was also allowed where the defendant's explanation was contradicted and unsupported by other than his own testimony. Evans and Brock were also both rape cases. The same circumstances are not present in the case before the Court now.
The State argues that Banks' "reason for flight following the aggravated assault of Dennis Thompson was unexplained, and is probative of his theory of necessary self defense." The State concedes that Banks was threatened by Patrick Thompson following the stabbing, but contends that the flight was in progress when the threat was made. The State takes the position that only the victim can provide a reason for the flight. This argument is neither logical nor based on existing case law. Banks' flight could be based on more than one reason. The State loses sight of the fact that Banks has never denied committing the act of stabbing the victim. Where the defendant is arguing self-defense, a flight instruction should be automatically ruled out and found to be of no probative value.
A flight instruction will have particular prejudicial effect in a case where self-defense is argued. Where the person against whom self defense has been exercised is still alive and has the back up support of other persons, flight seems logical and necessary. In other words, in the present case it would seem to have been illogical for Banks not to run. To suggest and highlight, through the sanction of a court granted instruction, that the defendant's flight was possibly an indication of guilt suggests that the court does not accept the self-defense argument.
In this case, even the victim ran. The jury heard the testimony on Banks' flight and was free to draw its own conclusions as to the significance. It was clearly reversible error to grant an instruction to call undue attention to Banks' flight.

CONCLUSION
The trial court erred in limiting the use of Banks' out-of-court statement during the testimony of Officer Hill and in failing to allow the statement into evidence. There was particularly a need for the jury to have the complete statement of what occurred.
The court also obviously erred in granting a "flight instruction" where there was an explanation for the flight implicit in the defense *752 of the case and where there was ample reason for Banks to leave the scene of the hostilities. This case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.