# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01066-SCT

*MICHAEL T. ANDERSON a/k/a MICHAEL ANDERSON a/k/a MICHAEL THERONE ANDERSON*

*v.*

*STATE OF MISSISSIPPI*

### <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2012 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | SCOTT ROGILLIO |
| | BRAD HUTTO |
| | KIMALON CAMPBELL |
| | DARLA PALMER |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/19/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Michael Anderson was charged with deliberate-design murder, aggravated assault, and being a felon in possession of a firearm. His sole theory of defense was self-defense. Over Anderson's objection, the prosecution was granted its requested flight instruction. Anderson

was convicted on all three counts and received three consecutive life sentences. The Court of Appeals affirmed the convictions and sentences.[1] On petition for certiorari, Anderson argues that the trial court erred by giving the flight instruction. Because no evidence was introduced to support that Anderson's flight was caused by something other than consciousness of guilt, *e.g.*, to avoid retaliation, the trial court did not err. The judgments of the Court of Appeals and the Circuit Court of the First Judicial District of Hinds County are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.     Late one night, Sylvester Coleman, Drystle Sanders, Ernestine Coleman, Wysia Sanders, and Travis Brown[2] went to the Triple-A Store in Jackson. Sylvester and Drystle went inside while the others stayed in the car. Anderson entered the store soon after.

¶3.     According to Anderson, Drystle became agitated when Anderson began talking about the women in the car. Drystle left the store. When Anderson later came out, Drystle struck him in the head. The two began "tussling." Anderson testified that, during the struggle, he heard "metal against metal" of a handgun falling onto the ground. He picked it up and shot Drystle several times. No one else heard the conversation, if any, that took place inside the store, and while no one else saw how the "tussle" began, multiple witnesses described subsequent events.

---

[1]*Anderson v. State*, No. 2012-KA-01066-COA, 2014 WL 5333986 (Miss. Ct. App. Oct. 21, 2014).

[2]Ernestine is Sylvester's mother, Wysia is Drystle's mother, and Travis is Sylvester's step-brother.

¶4.     Ernestine testified she heard shots and looked up in the parking lot to see Drystle falling. Sylvester came out of the store and took off running as Ernestine, who was driving the car, pulled out of the parking lot, following her son. Anderson was still in the parking lot when they left. Sylvester testified that, when he came out of the store, Anderson started shooting at him. Sylvester took off running, yelling at his mother to get out of the parking lot. She pulled away in the car,[3] leaving Anderson in the lot. Travis testified that he saw Drystle and Anderson fighting. Travis looked down to try to unlock the doors, heard shots, looked up, and saw Drystle falling. Travis saw Anderson firing at Sylvester as Sylvester exited the store. Sylvester ran as Ernestine cranked the car and left behind him, leaving Anderson in the lot. All three testified they saw Anderson later walking down Ridgeway Street away from the store as they drove up the street, back toward the store after making a block. Anderson fired at their car as they passed. Wysia's testimony was essentially the same as the other occupants in the car. All four testified that *only* Anderson had a gun.

¶5.     In addition, two unrelated and disinterested witnesses, off-duty Jackson Police Department Investigator Garland Ward and Stephen Johnson, witnessed the murder. Investigator Ward was leaving an establishment next door to the store when he heard a commotion in the nearby lot. As he approached, he heard two shots. He saw Drystle fall, and he saw Anderson stand over Drystle—who was lying on the ground—and aim the gun at him. Ward saw Sylvester running from the store yelling at the occupants of the car to "get down." Ward, off-duty and without a weapon, was calling an on-duty investigator when he heard

---

[3]Sylvester testified that the car was white.

more shots. He looked back at the scene and saw Anderson walking away from the store and down the road.

¶6.     Stephen Johnson was driving past the store when he saw Drystle lying on the ground. As Johnson pulled into the lot, he saw Anderson stand over Drystle and fire two more shots. The first misfired, but the State's expert pathologist identified the second as the fatal shot.[4] Johnson testified no one else was in the parking lot at the time except for Johnson, Anderson, and Drystle.[5] Johnson stated that Anderson walked off with the gun. As he was leaving, Johnson heard more shots coming from down Ridgeway.

¶7.     Anderson was indicted as a habitual offender under Mississippi Code Section 99-19-83 on three felony counts: deliberate-design murder for the death of Drystle Sanders, aggravated assault for shooting at Sylvester Coleman, and being a felon in possession of a firearm. Anderson's sole theory of defense was self-defense. He was granted a self-defense instruction but was denied an imperfect self-defense instruction in regard to the aggravated-assault charge. The trial court granted the State's request that the jury be instructed that self-defense cannot be a defense to felon in possession of a firearm. Over a defense objection, the court granted the State's flight instruction.

¶8.     The jury convicted Anderson of all three counts. He was sentenced as a habitual offender to three consecutive life sentences without the possibility of parole. He appealed,

---

[4]The pathologist also testified the initial shots to the lower body were not fatal. The shot to the chest was fatal, and the trajectory was consistent with the victim being shot lying down, facing up. The shot to the chest was consistent with being shot at close range. The shots to the lower body could not have happened while the victim was on his back.

[5]Johnson testified a dark-colored car was leaving the lot as Johnson was pulling in.

arguing the trial court erred by (1) giving the flight instruction, (2) instructing the jury that self-defense is not a defense to felon in possession of a firearm, and (3) excluding evidence of Drystle's intoxication. The Court of Appeals affirmed. Anderson filed a petition for writ of *certiorari*, which we granted on one issue:

> **Whether the trial court erred by giving a flight instruction when Anderson claimed self-defense.**

¶9. Jury instructions are reviewed for an abuse of discretion. ***Drummer v. State***, 167 So. 3d 1180, 1186 (Miss. 2015).

¶10. Anderson argues a flight instruction cannot be given if the defendant claims self-defense. However, the assertion of self-defense does not, *ipso jure*, preclude a trial court from granting a flight instruction. A flight instruction may be given if "that flight is unexplained and somehow probative of guilt or guilty knowledge." ***Reynolds v. State***, 658 So. 2d 852, 856 (Miss. 1995). *See also* ***Pannell v. State***, 455 So. 2d 785, 788 (Miss. 1984).[6] Probative is defined as "tending or serving to prove." Brian A. Garner, *A Dictionary of Modern Legal Usage* 694 (2nd ed. 2001). *See also Probative*, Black's Law Dictionary (10th ed. 2014) ("tending to prove or disprove"). Therefore, unexplained flight need only "tend to prove" guilt or guilty knowledge to satisfy the ***Reynolds*** probative requirement.

---

[6]Earlier this year, we affirmed the giving of a flight instruction and reaffirmed "the two-part unexplained-and-probative test" used in ***Pannell***. ***Drummer***, 167 So. 3d at 1188. We noted that "[i]ndeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." *Id.* at 1189 (citing ***Allen v. United States***, 164 U.S. 492, 499, 17 S. Ct. 154, 41 L. Ed. 528 (1896)). Specifically, "the demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence." *Id.* (citing ***Williams v. State***, 667 So. 2d 15, 22 (Miss. 1996)). Conversely, we have reversed the giving of flight instructions for various reasons; however none of these reasons is present here. *See id.*

¶11. A trial judge must first determine whether the evidence of flight is probative. ***Drummer***, 167 So. 3d at 1190 n.12. If the trial judge determines the evidence of flight is probative, he sends the issue to the jury for appropriate weighing ("to prove or disprove"). ***Id.*** If requested, the court may properly instruct the jury that flight, if found beyond a reasonable doubt, is a circumstance from which an *inference* of guilt may be drawn and caution the jury that it must consider all the evidence presented. *See **id.*** at 1189.

¶12. Justice Kitchens's dissent conflates the terms "presumption" and "inference," yet this Court clearly distinguishes the two:

> we consider the distinctive differences between "infer" and "presume." "Infer" is defined as "to conclude from certain premises or evidence." By this definition, a jury may not make an inference without evidence adduced at trial to support that inference. However, [the instruction at issue in ***Williams***] did not use "infer" but instead used "presume," which is defined as "to *assume* to be true without proof to the contrary." "Assume" is analogous to "presume" and "stress[es] the arbitrary acceptance as true of something which has not yet been proved.

***Williams v. State***, 111 So. 3d 620, 625 (Miss. 2013) (internal citations omitted). We agree the jury should never be told it can presume guilt; such would be "constitutionally untenable." *See* Dis. Op. ¶ 30. However, juries may be told they can infer guilt from probative, unexplained flight. *See* ***Reynolds***, 658 So. 2d at 856; ***Drummer***, 167 So. 3d at 1188.

¶13. Evidence of Anderson's flight was offered. The trial court determined it was probative and allowed the jury to consider it. The State requested a flight instruction. The trial court, in its discretion, granted the instruction, informing the jury that if it found beyond a reasonable doubt that Anderson had fled, it could infer "guilty knowledge or fear of arrest"

6

from that flight. The court further instructed the jury that it must consider all the evidence in determining the weight to assign to Anderson's flight. A trial judge is in the best position to determine whether the flight had probative value, sufficient to send the issue to the jury, based on the evidence adduced at trial. *See* **Houston v. State**, 776 So. 2d 695, 697 (Miss. 2000) ("The trial judge saw these witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demeanor. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable."). We find no abuse of discretion in his doing so.

¶14.　　On multiple occasions, this Court has addressed the giving of flight instructions when a defendant claims self-defense.[7] In **Banks**, Banks was arguing with the victim's cousin when the victim interjected himself into the argument. **Banks**, 631 So. 2d at 749. Banks claimed the victim approached him during the argument and drew a pistol. *Id.* Banks then stabbed him. *Id.* The victim ran off with the pistol, the cousin threatened to kill Banks, and Banks fled. *Id.* at 751. Furthermore, the cousin admitted at trial that he had threatened to kill Banks after the stabbing. *Id.* Given the facts of that case, the Court found that a flight instruction was improper. Evidence was adduced supporting Banks's flight, which led the **Banks** court to conclude: "[Banks] was leaving based on threats from [the victim's cousin] and on the alleged danger from the victim[.]" *Id.* In so finding, the Court stated:

---

[7]**Shumpert v. State**, 935 So. 2d 962 (Miss. 2006); **Tran v. State**, 681 So. 2d 514 (Miss. 1996); **Banks v. State**, 631 So. 2d 748 (Miss. 1994).

> A flight instruction will have particular prejudicial effect in a case where self-defense is argued. *Where the person against whom self defense has been exercised is still alive and has the back up support of other persons, flight seems logical and necessary.* In other words, in the present case it would seem to have been illogical for Banks not to run.

*Id.* (emphasis added).[8]

¶15.    Our decision in **Shumpert** evinces the obvious distinction between **Banks** and **Tran** on the one hand (defendant claiming self-defense with evidence explaining his flight) and Anderson on the other (defendant claiming self-defense but no evidence being adduced to explain his flight). *See* **Shumpert**, 935 So. 2d at 970. In **Shumpert**, the defendant claimed self-defense and claimed to have fled the scene to avoid retribution. *Id.* However, the **Shumpert** court found that the trial court did not err in granting a flight instruction because "flight was not explained by any reason other than consciousness of guilt." *Id.* Although Shumpert argued he fled to avoid being harmed by the victim, the trial court found a lack of evidence to support flight[9] (and this Court agreed);[10] this is diametrically opposed to the

---

[8]Two years after **Banks**, this Court held again that a flight instruction was not warranted in a self-defense case because evidence was adduced that the defendant fled out of fear of retribution. *See* **Tran**, 681 So. 2d at 519 ("Tran's flight was explained by both himself and his co-defendant—they were fleeing to avoid retribution from the friends of [the victim]."). Tran's claim of fear of retaliation was corroborated by his codefendant. *Id.*

[9] A witness testified that the victim had not harmed Shumpert, and a weapon was not found on the victim's body. **Shumpert**, 935 So. 2d at 970.

[10]In **Shumpert**, we recognized that **Tran** disapproved a flight instruction where self-defense was asserted, pointing out that **Tran** and **Banks** apply when the defendant claims self-defense *and* evidence is adduced that the defendant fled in fear of retaliation. Even though Shumpert asserted self-defense, every justice then serving on this Court agreed that the flight instruction was properly granted because "the flight was not explained by any reason other than consciousness of guilt." *Id.*

8

***Banks*** Court finding that flight was not only logical but necessary. *See **id.***; ***Banks***, 631 So. 2d at 751.

¶16.     We need only compare today's facts to those in ***Banks*** and ***Shumpert*** to determine which case controls today's decision. Given the testimony in ***Banks***, the ***Banks*** holding was well-founded: a flight instruction should not be granted where the defendant claims self-defense and "the person against whom self defense has been exercised is still alive and has the back up support of other persons." ***Id.*** Flight in such a situation seems logical and necessary. However, the facts developed in Anderson's case do not support the same result.

¶17.     Anderson's facts are more akin to ***Shumpert***, where a flight instruction was granted, notwithstanding the defendant's claim of self-defense. Anderson, like Shumpert, lacks evidence to support a claim that his flight was caused by a fear of retaliation.

¶18.     The only similarity in ***Banks***, ***Tran***, and today's case is that Anderson claimed self-defense. No evidence was adduced that Anderson's flight was "logical and necessary," or that he fled for any other reason unrelated to consciousness of guilt. *See **Banks***, 631 So. 2d at 751. An explanation for Anderson's flight is nowhere to be found in the record before us. The record reflects that no one other than Anderson was armed during or after the shooting. The record reflects that no one threatened to retaliate. Certainly the victim could not have, for he lay dying on the ground. The victim's unarmed companions sped off in a car or took off running as Anderson continued shooting toward Sylvester before Anderson himself fled the scene. The record reflects, through the testimony of multiple witnesses, that Anderson left the scene after Sylvester ran off and after the car drove away. Whereas "it would have

been illogical for Banks not to run," there was no reason for Anderson to run, except to avoid apprehension by law enforcement, *i.e.*, consciousness of guilt. *See **id.***

¶19.    Finally, pertinent to our search for the truth, Anderson's own testimony belies fear of retaliation. No witness testified that anyone other than Anderson was armed after the murder. With everyone gone and the victim lying on the sidewalk, Anderson testified he dropped the gun and walked away.

¶20.    No different than ***Shumpert***, the evidence presented in today's case fails to explain flight for any  logical or necessary reason. While this Court found flight was logical and necessary in ***Banks*** and ***Tran***, Anderson's flight, like Shumpert's, was unexplained to the trial judge and jury. As Anderson's flight from the murder scene was unexplained, the State's requested flight instruction comports with our existing law.

### CONCLUSION

¶21.    Assuredly, flight instructions should not be granted where the defendant claims self-defense *and* sufficient evidence is introduced which explains that the defendant's flight was caused by something other than a consciousness of guilt, *e.g.*, to avoid retaliation. *See **Shumpert***, 935 So. 2d 962; ***Tran***, 681 So. 2d 514; ***Banks***, 631 So. 2d 748. The record before us today offers no evidence that Anderson's flight was to avoid retaliation. Thus the trial court did not err in granting a flight instruction. The judgments of the trial court and the Court of Appeals, including Anderson's convictions and sentences, are affirmed.

¶22.    **THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY ARE AFFIRMED.  CONVICTIONS OF MURDER, AGGRAVATED ASSAULT AND FELON IN POSSESSION OF A WEAPON AND SENTENCES FOR EACH OF LIFE,**

10

**AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

**CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND KING, J.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶23. If the law as it presently exists is to be applied to this case, I agree with Justice Kitchens that a flight instruction was not proper. I write separately to express my view that this Court should abolish flight instructions altogether.[11]

¶24. Juries are instructed that they may draw reasonable inferences from the evidence,[12] and attorneys—including prosecutors—may argue the inferences they believe the jurors should draw.[13] But, by giving a flight instruction, a trial judge places the imprimatur of the court on a particular inference and effectively instructs the jury that "flight" is the functional equivalent of guilt. With respect to the jury's duty to draw inferences, the trial judge should be neutral. Instead, by giving flight instructions, trial judges appear to favor the inference favorable to the State. I believe this practice is inappropriate, and should cease.

**KITCHENS AND KING, JJ., JOIN THIS OPINION**.

---

[11] *Drummer v. State*, 167 So. 3d 1180, 1196–99 (Miss. 2015) (Kitchens, J., concurring in Part I and dissenting from Part II).

[12] *Flowers v. State*, 158 So. 3d 1009, 1081–82 (Miss. 2014).

[13] *Pitchford v. State*, 45 So. 3d 216, 234–35 (Miss. 2010); *Goff v. State*, 14 So. 3d 625, 654 (Miss. 2009) (quoting *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998)).

11

**KITCHENS, JUSTICE, DISSENTING:**

¶25.    Because the trial court erred by giving the jury a flight instruction, I respectfully dissent.

¶26.    We will overturn a trial court's giving of a jury instruction only when the trial court has abused its discretion. *Higgins v. State*, 725 So. 2d 220, 223 (¶ 15) (Miss. 1998). Jury instructions must be read "as a whole with no one instruction taken out of context." *Id.* at 223 (¶ 16) (quoting *Jackson v. State*, 645 So. 2d 921, 924 (Miss. 1994)).

¶27.    The flight instruction at issue in this appeal says:

> "Flight" is a circumstance from which guilty knowledge and/or fear of arrest may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that . . . [Anderson] did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of [Anderson].

¶28.    Over time, this Court has narrowed the circumstances under which the State may be granted a flight instruction.  We have held that prosecutors may be given a flight instruction only if "that flight is unexplained *and* somehow probative of guilt or guilty knowledge." *Reynolds v. State*, 658 So. 2d 852, 856 (Miss.1995) (emphasis added).  In this case, the flight was neither unexplained nor probative of guilt or guilty knowledge.

> A.    *The flight of the accused in this case can be explained by motivations other than guilt or guilty knowledge.*

¶29.    The majority declares that the flight instruction in this case was appropriate because there was no explanation for Michael Anderson's flight other than his guilty conscience.

12

However, this Court needs but to look to the facts of the case, as presented by the State, to discern that Anderson's flight was explained because he had reason to fear retaliation. During the course of the tussle between Anderson and Drystle Sanders, four of Drystle Sanders's friends and family members were in the immediate vicinity: Wysia Sanders (Drystle Sanders's mother), Ernestine Coleman, Sylvester Coleman, and Travis Brown. Anderson testified that he was scared that men had been sent to kill him in a hit. After shooting Drystle Sanders, Anderson turned and fired a hand gun at Sylvester Coleman, who was standing a few feet away at the entrance of the Triple-A store. Almost simultaneously, Sylvester Coleman and Anderson left the parking lot, heading in opposite directions. Only after these two men had departed, Ernestine Coleman drove away from the Triple-A store to look for Sylvester Coleman. While driving back to the store, her car passed Anderson, and Anderson fired shots toward the car. That Anderson shot in the direction of Drystle Sanders's friends and family members when he passed them indicates that he regarded them as a threat. After all, he had just shot Drystle Sanders; and there is no evidence in the record that Anderson, before or after his physical struggle with Drystle Sanders, fired at anyone other than those connected to Drystle Sanders. The majority's position, that Anderson had no reason to fear violent retaliation from four people closely tied to the victim who were in the immediate vicinity of the homicide, strains credulity. By the majority's own reasoning, the accused merely must be placed in fear of retaliation. It is not necessary that he become a victim of retaliation to give rise to a plausible explanation for his flight. That the allies of Drystle Sanders abstained from retaliation against Coleman does not mean that the State

13

established that Anderson was not placed in fear of retaliation. Under the circumstances, it would have been illogical for Anderson not to leave the scene.

¶30. By ignoring the circumstances surrounding Anderson's departure and by focusing only upon the absence of an explanation for it in Anderson's testimony, this Court violates fundamental rights protected in both the United States and Mississippi Constitutions. U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."); Miss. Const. art. 3, § 26 ("[The accused] shall not be compelled to give evidence against himself."). The majority opines that, "No evidence was adduced that Anderson's flight was 'logical and necessary,' or that he fled for any reason unrelated to consciousness of guilt. Maj. Op. ¶ 18 (quoting *Banks*, 631 So. 2d at 751). An elementary principle of criminal law is that every person charged with a criminal offense is presumed innocent, and the defendant bears no burden of production or obligation to prove his own innocence. *Jones v. State*, 920 So. 2d 465, 471 (Miss. 2006). Instead, "the prosecution carries the burden of proving all elements of the charged offenses beyond a reasonable doubt." *Id.* The majority's reasoning belies both this fundamental constitutional principle and principles of logic. In the majority's formulation, the State may request and be given a jury instruction by which the jurors are charged by the judge to "infer guilt" from a defendant's flight, no matter the circumstances, as long as the defendant himself does not produce evidence that explains away this farcical presumption of guilt. The majority's reasoning conflates the burdens of production and persuasion at trial and is constitutionally untenable.

14

B.    *Anderson's flight proves nothing relevant to the question of guilt.*

¶31.    Even if Anderson's flight could be explained only in terms of the guilty knowledge imputed to him, the flight in this case served no probative value.  In **Banks v. State**, 631 So. 2d 748 (Miss. 1994), this Court directly addressed the probative value of flight evidence in cases in which the defendant presents a theory of self defense.  We held in that case that "*Where the defendant is arguing self-defense, a flight instruction should be automatically ruled out and found to be of no probative value*." **Id.** at 751 (emphasis added); *accord* **Tran v. State**, 681 So. 2d 514, 519 (Miss. 1996) ("Because Tran was arguing self-defense and the jury heard the testimony on Tran's flight, it was free to draw its own conclusions as to the flight['s] significance. Since it was clearly reversible error to grant such an instruction and call undue attention to Tran's flight, on remand the lower court should not give the flight instruction.").  We reasoned that:

> A flight instruction will have particular prejudicial effect in a case where self-defense is argued. Where the person against whom self defense has been exercised is still alive and has the back up support of other persons, flight seems logical and necessary. In other words, in the present case it would seem to have been illogical for Banks not to run. To suggest and highlight, through the sanction of a court granted instruction, that the defendant's flight was possibly an indication of guilt suggests that the court does not accept the self-defense argument.

**Banks**, 631 So. 2d at 751.

¶32.    Our holding in **Banks** was unequivocal: in self defense cases, a flight instruction never is appropriate. *See* **id.** In cases in which the defendant claims self defense, the defendant's departure is in nowise probative and the jury should not be instructed to consider this circumstance in deciding whether he or she is guilty.

15

¶33. Further, the majority provides nothing that identifies or even suggests the probative value of Anderson's flight in this case. Tellingly, although the majority pontificates the value of deference to the trial court, it does not cite the trial court's finding that the flight evidence in this case would serve a probative purpose, a requisite finding for giving a flight instruction to the jury. Of course, the reason for this is that the trial court did not make such a finding and the prosecuting attorney in the case presented no argument regarding the probative value of Anderson's flight. The flight instruction was given to the jury after the following exchange:

**Defense Attorney:** Your honor, its my understanding that if there is a claim of self-defense, then a flight instruction is not proper.

**Prosecuting Attorney:** I disagree with that.

**Defense Attorney:** Let me find the page for you.

**Prosecuting Attorney:** Judge, my understanding of the law is that, on flight, that we don't get it if . . . the defendant says anything that's reasonable as to why he left other than to avoid arrest. And in this instance he said he dropped the gun and he just walked away, and then three days later they find him in a hotel because he says his picture is on T.V. or something like that. The point is, he left. There is no other reason for him to have left. He didn't get on the stand and say, look, if I didn't leave they were going to kill me. Well, as a matter of fact, we know that's not what he thought because he left the loaded weapon at the scene. He didn't say any reason whatsoever as to why he left. And since there is not a reason, the jury has a right to believe the reason he left was to avoid arrest.

**Defense Attorney:** Your Honor, if you could give me just a moment. There is a case when I was researching that spoke to that directly.

**Prosecuting Attorney:** I may be wrong, but I think what she is referring to is in a case where the defendant said, look, I had to get out of there because

16

I just killed somebody, and if I stuck around I was afraid I was going to get hurt.

**Defense Attorney:**   I'm sorry, I couldn't hear you.

**Prosecuting Attorney:**   Well, what I'm saying is, I think the case you're talking about is one where there was self-defense, I believe, but what happened was the defendant said if I didn't get out of there, there was a hostile crowd there and they were going to hurt me. He never does say that. As a matter of fact, he said he walked away and got out of there. And, matter of fact, not only was he not worried about somebody hurting him, heck, he left a loaded weapon behind for them to do so. He wasn't worried about that. The only reason he left was to not face the consequences. What he did some three days later doesn't matter.

**Defense Attorney:**   I don't think it's relevant about having left a weapon as to whether or not he was fleeing . . . .

**Prosecuting Attorney:**   I mean, I think it's pretty clear, Judge. We certainly get a flight instruction under certain circumstances. Everybody agrees with that[,] I think. Well, the only time we don't get it [—]and they do say it's rare that we're supposed to get it [—]is where there is no other reason why he left. And he got on the stand and gave absolutely no other reason why he left. As a matter of fact, he said . . . the  one reason he could have said was ["]I was afraid I was going to be hurt if I stuck around. It was a hostile crowd.["] Well, heck, not only did he not worry about that, he left a loaded weapon behind and walked away.

**Defense Attorney:**   Well, Your Honor, isn't it also true that in the act of self-defense a person doesn't have to retreat . . . . [Y]ou can stand your ground and you don't have to retreat. So whether or not there is flight is of no consequence because you are arguing I have acted in self-defense.

**The Court:**   I think that['s] two different instructions . . . .

**Prosecuting Attorney:**   It is.

**Defense Attorney:**   Yes, I recognize that it is two different instructions. But I was thinking just in the logic of a defendant not having to retreat or

|  | not having to leave when someone attacks him, then he can act to protect himself, then he's justified in doing so. So whether he leaves or not is of no consequence. But I would certainly have to get the case that I had, Your Honor. |
|---|---|
| **The Court:** | All right. I'll review that one. |

Here, there is no evidence in the record that the trial court found that Anderson's flight had probative value. The State argued that the trial court should give a flight instruction if the State proved only that "*there is no other reason why he left*." Thus, the majority defers to the trial court's judgment regarding the probative value of Anderson's flight and the propriety of the flight instruction in this case, when the State presented no argument in support of whatever probative value, if any, the flight evidence might have.

¶34. Thus, in affirming the trial court's judgment, the majority not only misapplies ***Banks***. In addition, it tacitly holds that flight has probative value in every single criminal case, regardless of the circumstances of the case, regardless of whether the State makes an argument concerning the flight's probative value, and regardless of whether the trial court applies the correct test.

¶35. The majority ignores this Court's decision in ***Banks,*** eliminates the burden on the State to prove that the defendant's flight serves a probative value, and forces the defendant to provide an explanation for his or her flight. Stated differently, under the majority's formulation, if a criminal defendant does not present evidence explaining the reason for his or her flight, the State is entitled to an instruction authorizing the jury to infer the defendant's guilt, thereby revoking the constitutional rights of the presumption of innocence and the right to remain silent. I therefore respectfully dissent.

18

**WALLER, C.J, DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**