KITCHENS, Justice,
dissenting:
¶ 25. Because the trial court erred by giving the .jury a flight instruction, I respectfully dissent. . .
¶ 26. We will overturn a trial court’s giving of a jury instruction only when the trial court has abused its discretion. Higgins v. State, 725 So.2d 220, 223 (¶ 15) (Miss.1998). Jury instructions must -be read “as a whole with no one instruction taken out of context,” Id. at 223 (¶ 16) (quoting Jackson v. State, 645 So.2d 921, 924 (Miss.1994)).
¶ 27. The flight instruction at issue in this appeal says:
“Flight” is a circumstance from which guilty knowledge and/or fear of arrest may be inferred. If you believe from the evidence in this casé beyond a reasonable doubt that .'.. [Anderson] did flee or go into hiding, such flight or hiding is to be considered in connection *974 with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of [Anderson].
¶ 28. Over time, this Court has narrowed the circumstances under which the State may be granted a flight instruction. We have held that prosecutors may be given a flight instruction only if “that flight is unexplained and somehow probative of guilt or guilty knowledge.” Reynolds v. State, 658 So.2d 852, 856 (Miss.1995) (emphasis added). In this case, the flight was neither unexplained nor probative of guilt or guilty knowledge.

A. The flight of the accused in this case can be explained by motivations other than guilt or guilty knowledge.

¶ 29. The majority declares that the flight instruction in this case was appropriate because there was no explanation for Michael Anderson’s flight other than his guilty conscience. However, this Court needs but to look to the facts of the ease, as presented by the State, to discern that Anderson’s flight was explained because he had reason to fear retaliation. During the course of the tussle between Anderson and Drystle Sanders, four of Drystle Sanders’s friends and family members were in the immediate vicinity: Wysia Sanders (Drys-tle Sanders’s mother), Ernestine Coleman, Sylvester Coleman,, and Travis Brown. Anderson testified that he was scared that men had been sent to kill him in a hit. After shooting Drystle Sanders, Anderson turned and fired a hand gun at Sylvester Coleman, who was standing a few feet away at the entrance of the Triple-A store. Almost simultaneously, Sylvester Coleman and Anderson left the parking lot, heading in opposite directions. Only after these two men had departed, Ernestine Coleman drove away from the Triple-A store to look for Sylvester Coleman. . While driving back to the store,,, her car passed Anderson,- and Anderson fired shots toward the car. That Anderson shot in the direction of Drystle Sanders’s friends and family members when he passed them indicates that he regarded them as a threat. After all, he had just shot-Drystle Sanders; and there is no evidence in the record that Anderson, before or after his physical struggle with Drystle Sanders, fired at anyone other than- those connected to Drystle Sanders. The majority’s position, that Anderson had no reason to fear violent retaliation from four people closely tied to the victim who were in the immediate vicinity of the homicide, strains credulity. By the majority’s own reasoning, the accused merely must, be placed in fear of retaliation. It is.not necessary that he become a victim of retaliation to give rise to a plausible explanation for his flight. That the allies of Drystle Sanders abstained from retaliation against Coleman does not mean that-the State established that Anderson was not placed in fear of retaliation. Under the circumstances, it would have been illogical' for Anderson not to leave the scene.
¶ 30. By ignoring- the -circumstances surrounding Anderson’s departure and by focusing only upon the absence of an explanation for it in Anderson’s testimony, this Court violates fundamental rights protected in both the United States and Mississippi Constitutions. U.S. Const. amend. V (“No person ... shall.be compelled in any criminal case to be a witness against himself.”); Miss. Const. art. 3, § 26 (“[The accused] shall not be compelled to give evidence against himself.”). The majority opines that, “No evidence was adduced that Anderson’s flight was ‘logical and nec *975 essary,’ or that he fled for any reason unrelated to consciousness of guilt.” Maj. Op. ¶ 18 (quoting Banks, 631 So.2d at 751). An elementary principle of criminal law is that every person charged with a criminal offense is presumed innocent, and the defendant bears no burden of production or obligation to prove his own innocence. Jones v. State, 920 So.2d 465, 471 (Miss.2006). Instead, “the- prosecution carries the burden of proving all elements of the charged offenses beyond a reasonable doubt.” Id. The majority’s reasoning belies both this fundamental constitutional principle and principles of logic. In the majority’s formulation, the State may request and be given a jury instruction by which the jurors are charged by the judge to “infer guilt” from "a defendant’s flight, no matter the circumstances, as long as the defendant himself does not produce evidence that explains away this farcical presumption of guilt. The majority’s reasoning conflates the burdens of production and persuasion at trial and is constitutionally untenable.

B. Anderson’s flight proves nothing relevant to the question of guilt.

¶ 31. Even if Anderson’s flight could be explained only in terms of the guilty knowledge imputed to him, the flight in this case served no probative value. In Banks v. State, 631 So.2d 748 (Miss.1994), this Court directly addressed the probative value of flight evidence in cases in which the defendant presents a theory of self defense. We held in that case that “Where the defendant is arguing self-defense, a flight instruction should be automatically ruled out and found to be of no probative value.” Id. at 751 (emphasis added); accord Tran v. State, 681 So.2d 514, 519 (Miss.1996) (“Because Tran was arguing self-defense and the jury heard the testimony on Tran’s flight, it was free to draw its own conclusions as to the flight[’s] significance. Since it was clearly reversible error to grant'such an instruction and call undue attention to' Tran’s flight, on remand the lower court should not give the flight instruction.”). We reasoned that:
A flight instruction will have particular prejudicial effect in a ease where self-defense is argued. Where the person against whom self defense has been exercised is still alive and has the back up support of other persons, flight seems logical and necessary. In other words, in the present case it Would seem to have been illogical for Banks not- to run. To suggest and highlight, through the sanction of a court granted instruction, that the defendant’s flight was possibly an indication of guilt suggests that the court does not- accept the self-defense argument.
Banks, 631 So.2d at 751.
¶ 32. Our holding in Banks was unequivocal: in self defense eases, a. flight instruction never is appropriate. See id. In cases in which the defendant claims self defense, the defendant’s departure is in nowise probative and.the jury should not be instructed to consider this circumstance in deciding whether he or she is guilty.
¶ 33. Further, the majority provides nothing that identifies or even suggests the probative value of Anderson’s flight in this case. Tellingly, although the'majority pontificates the value of deference to the trial court, it does not cite the trial court’s finding that the flight evidence in this case would serve a probative purpose,- a requisite finding for giving a flight instruction to the jury/ Of course, the reason for this is that the trial court did not make such a finding and the prosecuting attorney in the case presented no argument regarding the probative value of Anderson’s flight. The flight instruction was given to the jury after the following exchange:
*976 Defense Attorney: Your honor, its my understanding that if- there is a claim of self-defense, then a flight instruction is not proper.
Prosecuting Attorney: I-disagree with that.
Defense Attorney: Let me find-, the . page for you.
Prosecuting Attorney: Judge, my understanding of the law is that, on flight, that we don’t get it if ... the defendant says anything that’s reasonable as to why he left other than to avoid arrest. And in this instance he said he dropped the gun and he just walked away, and then three days la- - ter they And him in a hotel because he says his picture is on T.V. or something like that. The point is, he left. There is no other reason for him to have left. He didn’t get on the stand and say, look, if I didn’t leave they were going to kill me. Well, as a matter of fact, we know that’s not what he thought because he left the loaded weapon at the scene.' He - didn’t say any reason whatsoever as to why he left. And since there is not a reason, the jury has a right to believe the reason he left was to avoid arrest.
Defense Attorney: Your Honor, if you could give me just a moment. There - is a case when I was researching that spoke to that directly.
Prosecuting Attorney: I may be wrong, but I think what she is referring to is in a case where the defendant said, look, I had to get out of - there, because I just killed somebody, and if I stuck around I was afraid I was going to get hurt.
Defense Attorney: I’m sorry, I couldn’t hear you.
Prosecuting Attorney: Well, what I’m saying is, I think the cáse you’re talking about is one where there was self-defense, I believe, but what happened was the defendant said if I didn’t get out of there, there was a hostile crowd there and they were going to hurt me. He never does say that. As a matter of fact, he said he walked away and got out of there. And, matter of fact, not only was he not - worried about somebody hurting him, heck, he left a loaded weapon behind for them to do so. He wasn’t worried about that. The only reason he left was to not face the consequences. What he did some three days later doesn’t matter.
Defense Attorney: I don’t think'it’s relevant about having left a weapon as to whether or not he was fleeing....
Prosecuting Attorney: I mean, I think it’s pretty clear, Judge. We certainly gét a flight instruction under, certain circumstances. Everybody agrees with that[,] I think. Well, the only time we don’t get it[ — ]and they do say it’s rare that we’re supposed to get it[ — ]is where there is no other reason why he left. And he got on the stand and gave absolutely no other reason why he left. As a matter of fact, he said ... the one reason he could have said was [“]I was afraid I was going to be hurt if I stuck around. It was a hostile crowd. [”] Well, heck, not only did he not worry about that, he left a loaded weapon behind and walked away.
Defense Attorney: Well, Your Honor, isn’t it also true that in the act of self-defense a person doesn’t have to retreat. ... [Y]ou can stand your ground and you don’t have to retreat. So whether or not there is flight is of no consequence because you are arguing I have acted in self-defense.
The Court: I think that[’s] two different instructions....
Prosecuting Attorney: It is.
*977 Defense Attorney: Yes, I recognize that it is two different instructions. But I was thinking just in the logic of a defendant not having to retreat or not having to leave when someone attacks him, then he can act to protect himself, then he’s justified in doing so. So whether he leaves or not is of no consequence. But I would certainly have to get the case that I had, Your Honor.
The Court: All right. I’ll review that one.
Here, there is no evidence in the record that the trial court found that Anderson’s flight had probative value. The State argued that the trial court should give a flight instruction if the State proved only that “there is no other reason why he left.” Thus, the majority defers to the trial court’s judgment regarding the probative value of Anderson’s flight and the propriety of the flight instruction in this case, when the State presented no argument in support of-, whatever probative valué, if any, the flight evidence might have¡
¶ 34. Thus, in affirming the trial court’s judgment, the majority not only misapplies Banks. In addition, it tacitly holds that flight has probative value in every single criminal case, regardless of the circumstances of the case, regardless of whether the State makes an argument concerning the flight’s probative value, and regardless of whether the trial court applies the correct test.
¶ 35. The majority ignores this Court’s decision in Banks, eliminates the burden on the State to prove that the defendant’s flight serves a probative value, and forces the defendant to provide an explanation for his or her flight. Stated- differently, under the majority’s formulation, if á criminal defendant does not present evidence explaining the reason for his-or her flight, the State is entitled to an instruction authorizing the jury to infer the defendant’s guilt, thereby revoking the constitutional rights of the presumption of innocence and the right to remain silent. I therefore respectfully dissent.
WALLER, C.J., DICKINSON, P.J., ' AND KING, J, JOIN THIS OPINION.